**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **CRIMINAL NO. 21-107 (RDM)** |
| **v.** : | |
| : | |
| **BRUNO JOSEPH CUA,** : | |
| : | |
| **Defendant.** : | |

**UNITED STATES' MOTION FOR PROTECTIVE ORDER**

The United States of America hereby moves this Court for a protective order pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure, seeking to prevent the dissemination or misuse of discovery material containing sensitive information as further described below. Defendant Cua, through counsel, William Zapf, Esq., does not object to the Court's entry of the proposed protective order.

1. Defendant is charged via indictment with offenses related to crimes that occurred at the United States Capitol on January 6, 2021. On that date, as a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election, members of a large crowd that had assembled outside the Capitol violently forced their way through Capitol Police barricades and into the Capitol. Multiple law enforcement officers protecting the Capitol were threatened, assaulted and overwhelmed by an enormous mob, which included a number of individuals with weapons, bulletproof vests, and pepper spray. The Joint Session and the entire official proceeding of the Congress was halted while the Capitol Police, the Metropolitan Police Department, and other law enforcement agencies worked to clear the Capitol of hundreds of unlawful occupants

and ensure the safety of elected officials.  This event in its entirety is hereinafter referred to as the "Capitol Attack."

2. Over 220 individuals have been publicly charged in connection with the Capitol Attack.  Investigations have been opened into several hundred additional individuals, and the government expects that more investigations will be opened.  The spectrum of crimes charged and under investigation in connection with the Capitol Attack includes (but is not limited to) trespass, engaging in disruptive or violent conduct in the Capitol or on Capitol grounds, destruction of government property, theft of government property, assaults on federal and local police officers, firearms offenses, civil disorder, obstruction of an official proceeding, possession and use of destructive devices, murder, sedition and conspiracy.

3. Multiple individuals charged or under investigation are: (a) charged or expected to be charged with crimes of violence; (b) associated with anti-government militia organizations and other groups (e.g., Proud Boys, Oathkeepers, Three Percenters, Cowboys for Trump) that deny the legitimacy of the United States government; (c) coordinated and/or participated in the violent events which took place at the Capitol; and (d) have made statements indicating an intention to continue in similar violent endeavors until the current administration is overthrown. Dozens of the individuals charged, including Defendant Cua, have been detained pending trial because a judicial officer determined that the release of such person will not reasonably assure the appearance of the person, as required; will endanger the safety of any other person or the community; and/or will pose a risk of obstruction of justice.

4. In connection with the above-described cases and on-going investigations, law enforcement and the government have obtained and continue to obtain voluminous amounts of information and evidence relating to both charged and uncharged individuals.  By way of

illustration, such information and evidence includes but is not limited to: (a) surveillance videos from the U.S. Capitol and Grounds (constituting hundreds of hours of video); (b) digital downloads of hundreds of digital devices and social media accounts that belong to individuals involved in or associated with the Capitol Attack; (c) hundreds of law enforcement body-worn camera videos; (c) hundreds of financial records, telephone records, motor vehicle and criminal history records; (d) thousands of tips; and (e) hundreds of witness and source interviews.

5. Consistent with Federal Rule of Criminal Procedure Rule 16, the government intends to provide or make available to Defendant those documents and objects in its possession that are material to the preparation of the defense, that the government intends to use in its case-in-chief at trial, or that were obtained from or belong to Defendant. Given the number of defendants charged and the number of open investigations, such discovery materials may include large volumes of highly sensitive private and confidential information of numerous individuals other than Defendant, as well as materials which, if more widely disseminated, could jeopardize the government's on-going investigations and the security of witnesses, e.g.:

a. Records obtained from digital device downloads, and searches of electronic communications (e.g., e-mail and social media), of individuals other than Defendant;

b. Records of personal identifying information of individuals other than Defendant, including another individual's date of birth, social security number, address, telephone number, email address, driver's license number, professional license number, or family members' names, as well as contact information for, photographs of, and private conversations with family members and associates not related to the criminal conduct in this case, which such individuals may reasonably wish to protect from unnecessary dissemination ("Personal Information");

c. Financial information of individuals other than Defendant, or entities controlled by Defendant, including bank account numbers, credit or debit card numbers, account passwords, contact information, or taxpayer identification numbers ("Financial Information");

3

    d. Information regarding the government's confidential source(s) or source(s) of information, including criminal histories, arrest records and summaries of information provided to the government ("Confidential Source Information");

    e. Sealed documents, to include search warrant applications and their contents (affidavits, orders) and other court-ordered authorizations (e.g., pen registers, geolocation orders, tracking orders) ("Sealed Information"), that contain Personal Information, Financial Information, or Confidential Source Information;

    f. Tips and law enforcement reports and/or notes, including reports of interviews of individuals other than defendant, which may contain Personal Information;

    g. Grand jury transcripts and exhibits;

    h. Surveillance footage from the U.S. Capitol and Grounds;

    i. Hundreds of body-worn camera videos from the Metropolitan Police Department, Arlington County Police Department, and other law enforcement agencies operating on January 6, 2021, in support of the protection of the Capitol (constituting thousands of hours of body-worn cameras); and

    j. Other investigative information not yet publicly known, the dissemination of which could jeopardize the government's on-going investigations or the security of its witnesses, which the government will identify as "Sensitive".

6. Under the Federal Rules of Criminal Procedure, a court "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief" relating to discovery by entering a protective order. Fed. R. Crim. P. 16(d)(1). "The burden of showing 'good cause' is on the party seeking the order[.]" *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (citations and alterations omitted). Once a showing of good cause has been made, the court has relatively unconstrained discretion to fashion an appropriate protective order. *See United States v. O'Keefe*, No. 06-CR-0249, 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007) (describing the court's discretion as "vast"); *Cordova*, 806 F.3d at 1090 ("[A] 'trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted

4

disclosure of the materials which they may be entitled to inspect.'" (quoting *Alderman v. United States*, 394 U.S. 165, 185, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)).

7. "Protective orders vary in range and type 'from true blanket orders (everything is tentatively protected until otherwise ordered) to very narrow ones limiting access only to specific information after a specific finding of need.'" *United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012). "Courts use protective orders . . . to expedite the flow of discovery in cases involving a large amount of sensitive information." *United States v. Johnson*, 314 F. Supp. 3d 248, 252 (D.D.C. 2018)(internal quotations and citations omitted).

8. Courts also use protective orders when necessary to protect the integrity of on-going investigations. "[W]here public disclosure of certain materials might officially reveal the sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges, courts have found it appropriate to enter a protective order." *United States v. Smith*, 985 F. Supp. 2d 506, 531 (S.D.N.Y. 2013), citing *United States v. Bin Laden*, No. 98–CR–1023, 2001 WL 66393, at *2 (S.D.N.Y. Jan. 25, 2001)(noting that the court adopted a protective order because dissemination of discovery materials would "jeopardize the ongoing Government investigation into the activities of alleged associates of the Defendants").

9. In determining whether to issue a protective order, courts also take into account "the safety of witnesses and others, a particular danger of perjury or witness intimidation, and the protection of information vital to national security.'" *Cordova*, 806 F.3d at 1090 (citations and alterations omitted). "Considering the type of crime charged helps assess the possible threats to the safety and privacy of the victim. Defendants accused of securities fraud or shoplifting, for instance, may not pose as great a danger to victims as those charged with crimes of violence."

5

*United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019). "A long record of convictions for violent crimes may suggest a substantial danger to the safety of others. Similarly, a history of failures to follow court orders may justify a more restrictive protective order." *Id.*

10. The entry of this order will permit the government to produce expeditiously the disclosure material without further litigation or the need for redaction. It will also afford the defense prompt access to those materials, in unredacted form, which will facilitate the preparation of the defense.

11. Defense counsel has authorized the government to state that Defendant has no objection to this motion.

WHEREFORE, to expedite the government's disclosure of discovery materials, and to adequately protect the privacy interests of the persons identified therein and the integrity of the government's on-going investigations and the security of witnesses, the government requests that pursuant to the Court's authority under Fed. R. Crim. P. 16(d)(1), the Court enter the attached proposed order.

Dated: February 25, 2021

                                        Respectfully submitted,

                                        MICHAEL R. SHERWIN
                                        Acting United States Attorney

By:         /s/
                                        KIMBERLY L. PASCHALL
                                        Assistant United States Attorney
                                        D.C. Bar No. 1015665
                                        555 4th Street, N.W., Room 4116
                                        Washington, D.C. 20530
                                        202-252-2650
                                        Kimberly.paschall@usdoj.gov