**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CASE NO. 21-CR-107 (RDM)** |
| | : | |
| **BRUNO JOSEPH CUA,** | : | |
| **Defendant.** | : | |


**OPPOSITION TO DEFENDANT'S EMERGENCY**
**MOTION FOR PRE-TRIAL RELEASE**


"Unfortunately, they really want Civil War II"

- Public Parler post by @PatriotBruno, December 11, 2020


"Our peaceful protests and sign holding have proven to be completely useless. They turn off the TV's, close the blinds, and ignore us. When is it time to save our country and our freedom by force? #LIVEFREEORDIE"

- Public Parler post by @PatriotBruno, December 12, 2020


"I think it's time to mount a .50 cal to the roof of my truck...just in case. #COMEANDTAKEIT"

- Public Parler post by @PatriotBruno, December 13, 2020


"⚇#GEORGIA⚇ Our peaceful protests against CORRUPT #briankemp aren't working. When do we get AGGRESSIVE? Before or after they STEAL our freedom?! WHEN IS IT TIME TO DRAG HIM OUT OF HIS MANSION? IM READY!!! THIS IS OUR #1776 !"

- Public Parler post by @PatriotBruno, December 13, 2020


"⚇ATTENTION⚇ PRESIDENT #TRUMP IS CALLING ALL #PATRIOTS TO RALLY IN #WASHINGTONDC JANUARY 6TH!! This is extremely important because this is the day congress will finalize the election! If they dont do what's right MILLIONS

1

of us will BREAK DOWN THEIR DOORS! #LIVEFREEORDIE #FREEDOM ECHO
THIS POST TO SPREAD THE WORD! #JAN6TH"

- Public Parler post by @PatriotBruno, December 19, 2020

"On JAN 6th congress will open their blinds and see MILLIONS OF ANGRY
#PATRIOTS. OPEN CARRY MISSON. If they vote for sleepy joe and commie
KAMALA, we BREAK DOWN THEIR DOORS AND TAKE OUR COUNTRY BACK
BY FORCE!  THIS IS OUR #1776 . #LIVEFREEORDIE"

- Public Parler post by @PatriotBruno, December 19, 2020

"I have lost faith in the court systems, 90% of our government is completely corrupt on
both sides, and they're not going to go away by asking nicely. We the people voted for
President Trump and this election will have to be corrected by #WETHEPEOPLE . No
court is going to save us at this point, it's #LIBERTYORDEATH. #January6th Washington
DC. I'll be disappointed if you're not there. #LIVEFREEORDIE"

- Public Parler post by @PatriotBruno, December 21, 2020

"President Trump is calling us to FIGHT! #DOJ, #SCOTUS, #FBI, His own cabinet,
everyone has betrayed him. It's Trump & #WeThePeople VS the #deepstate and the #CCP.
He knows this is the only way to save our great country, show up #January6th. It's time to
take our freedom back the old fashioned way. #Thisisour1776 #LIVEFREEORDIE
#FIGHTFORTRUMP"

- Public Parler post by @PatriotBruno, December 26, 2020

"You ever seen the movie #Braveheart? Yeah that needs to be #January6th
#LiveFreeOrDie"

- Public Parler post by @PatriotBruno, December 26, 2020

"🔫IMPORTANT: I hear chatter of DC having "firearm checkpoints", where they will
stop you, search your car (without a warrant) and arrest you for having a gun. Which is
an unconstitutional felony in DC. Bring other weapons if you prefer, like pepper spray,
tasers, baseball bats, whatever you want.. Although may I remind you that that is
EXACTLY what they want from us, to lay down our weapons and be sheep! They know
they cannot control us if we are armed and dangerous! I don't know who needs to hear
this, but they can't arrest all of us. Do not back down and do not be discouraged. Show

up and be ready to fight. This really is our #1776 . Please echo to spread awareness."

-   Public Parler post by @PatriotBruno, January 1, 2021

"The tree of liberty often has to be watered from the blood of tyrants. And the tree is thirsty. The bottom picture is patriots spearing an American Flag into the United States Capital. What happened at the capital was a constitutionally protected right. WE THE PEOPLE have a right to rise up and overthrow a tyrannical government. Violence is never the answer? You denounce violence? Do you denounce the revolutionary war? Do you denounce the "shot heard around the world"? The only reason you're here today is because of violence against tyranny. This country exists because of violence. I'm not saying it's always the answer, but it's a final resort when all else fails and the entire government ignores its people. THEY HEAR US NOW!

-   Public Parler post by @PatriotBruno, January 7, 2021

"We have a first amendment to protect our right to peacefully protest. We have a second amendment incase the first one doesn't work. It didn't work. Violent protests against the capital (NOT SMALL BUSINESS'S) are well within our constitutional rights. #LiveFreeOrDie #January6th #PresidentTrump #4moreyears #trumpwon #stopthesteal #washingtondc"

-   Public Parler post by @PatriotBruno, January 7, 2021

"Dear Swamp Rats,

The events at the capital were a reminder that WE THE PEOPLE are in charge of this country and that you work for us. There will be no "warning shot" next time.

Signed,

#WETHEPEOPLE"

-   Public Parler post by @PatriotBruno, January 7, 2021

"We already knew the democrats were swamp rats, but the last two months have clearly proven that the name republicans or democrats means nothing. Everyone who works in congress is a traitor to the people and deserves a public execution. Time for a new party, the patriot party."

-   Public Parler post by @PatriotBruno, January 8, 2021

"Ivanka pointing to my son's worlds biggest TRUMP flag! @6519b4b725f64ac58ffe1d7cf2f0e9bd #patriot #fightforfreedom #fightforamerica #fightfortrump"

- Public Parler post by @AmeriQua tagging @PatriotBruno, December 21, 2020

This small sample of public social media posts on the platform Parler by the defendant in this case evinces a full picture of who this really defendant is: a radicalized man with violent tendencies and no remorse for his participation in the violent insurrection that occurred at the U.S. Capitol on January 6, 2021. That participation was not one of a mere bystander. The video and photographic evidence in this case shows the defendant carrying an asp baton inside the U.S. Capitol, assaulting a law enforcement officer protecting the doors to the Gallery of the Senate, sitting in the chair on the Senate dais where the Vice President had been presiding earlier that day, and using his cellphone to document the papers of the U.S. Senators present that day to certify the electoral college vote for the 2020 Presidential election.

Moreover, the defendant's parents are hardly appropriate custodians given their own participation in the defendant's crimes on January 6, 2021. As elicited at the detention hearing in the Northern District of Georgia, the defendant's parents drove him from Georgia to the insurrection in Washington, D.C., knew he was in possession of a dangerous weapon, went on to the Capitol grounds with him, watched him walk off towards the Capitol building, did not discourage him from climbing the scaffolding set up for the Inauguration, and discussed his illegal activities inside the Capitol once he returned. See Exhibit 1, Hearing Tr. 02.10.21, 53:15- 58:8; Exhibit 2, Hearing Tr. 02.12.21, 26: 3-8. His parents even follow and promote the defendant's social media from their own Parler account, as noted above. After returning to Georgia from Washington, D.C., the defendant's parents "realized that…he did something very wrong and he

could be in a lot of trouble," but did nothing to alert authorities. See Exhibit 2, Hearing Tr. 02.12.21, 15: 2-5. The defendant was ultimately arrested on the criminal complaint in this case on February 5, 2021, almost a month after his parents were fully aware of his illegal activities inside the Capitol, to include his altercation with a plain-clothed member of the Capitol Police. See Exhibit 2, Hearing Tr. 02.12.21, 7: 2-8.

For the reasons fully discussed below, the government respectfully opposes the defendant's motion for pre-trial release. There is a basis to hold the defendant under 18 U.S.C. 3142(f)(1)(E), (f)(2)(A), and (f)(2)(B), and the factors in 18 U.S.C. 3142(g) favor detention  In support thereof, the government states the following:

## I.      BACKGROUND

### A.      Statement of Facts

The United States Capitol, located at First Street, SE, in Washington, D.C., is secured 24 hours-a-day by the U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by the Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public and a joint session of the United States Congress convened inside. During the joint session, elected members of the U.S. House of Representatives and the U.S. Senate were meeting in separate Chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m.  Vice President Mike Pence was present and presiding in the Senate Chamber.

With the joint session underway, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol

building, and U.S. Capitol Police were present and attempting to keep the crowd away from the building and the proceedings underway inside.

Between 1:00 p.m. and 2:00 p.m., individuals in the crowd forced their way through, up, and over the barricades and officers of the U.S. Capitol Police, and advanced to the exterior façade of the building. They did so while the joint session was still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the U.S. Capitol.  However, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows.

Shortly thereafter, members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the Chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

Beginning on or about January 8, 2021, the FBI received at least two tips identifying the defendant, Bruno Joseph Cua, as a participant in the January 6, 2021 riot at the U.S. Capitol.  One witness, ("C1"), a sworn Law Enforcement Officer ("LEO"), reported the defendant to the FBI on or about January 11, 2021. C1 identified the defendant in a photograph from a Washington, D.C. Metropolitan Police Department ("MPD") presentation titled, "PERSONS OF INTEREST IN UNREST-RELATED OFFENSES." C1 has had direct interactions with the defendant, including in-person, through C1's official duties as an LEO in the jurisdiction where the defendant lives in Milton, Georgia. After a follow-up telephone interview with an FBI Agent on January 15, 2021,

C1 provided a total of five screenshots/photographs to the FBI, including screenshots of the MPD presentation, and screenshots from the defendant's Instagram account, @bruno_cua1776.[1]

In the screenshot of an Instagram story from the defendant's Instagram account, the defendant stated he "stormed" the Capitol and, along with unidentified others, "physically fought our way in." The screenshot was captured at 5:33 PM on January 6, 2021.



On January 17, 2021, The New Yorker published a video titled, "A Reporter's Video from Inside the Capitol Siege". The video documents individuals as they fought their way inside the U.S. Capitol on January 6, 2021, and shows those who made it all the way to the Senate floor.

---

[1] Subsequent legal process to Instagram has confirmed this account belongs to the defendant.

The video shows the defendant in the Senate Gallery.[2] The defendant is seen in front of a marble wall wearing the dark sweatshirt red hat and holding the same jean jacket from screenshots provided by C1. The defendant is also holding a cellular phone and appears to be actively filming. Moments later, the defendant is seen facing the camera, wearing the dark sweatshirt, holding the same jean jacket in his left hand, a red cellular phone in his right hand, while wearing grey gloves. Subsequently, the defendant is heard off camera stating, "They can steal an election, but we can't sit in their chairs?" In an in-person interview with FBI Agents on January 20, 2021, C1 identified CUA speaking in the video at the same timestamp.



---

[2] at a video timestamp of approximately 4:21. At a timestamp of approximately 4:27,







On January 20, 2021, FBI Agents conducted an in-person interview of C1. FBI Agents also interviewed WITNESS #1 ("W1") and WITNESS #2 ("W2"), both of whom are sworn LEOs. W1 and W2 positively identified CUA based on their direct and indirect interactions with CUA through their official duties as LEOs in the jurisdiction where CUA lives in Milton, Georgia. C1, W1, and W2 each reviewed the video from The New Yorker after its release on January 17, 2021. C1, W1, and W2 each independently identified the defendant as speaking in the video at the same approximate timestamp of 4:44. W1 corroborated the identification of the defendant in screenshots of the defendant provided by C1. W2 also corroborated the identification of the defendant in the same screenshots.



Still shots of the CSPAN footage inside the Senate Chamber on January 6, 2021 additionally show the defendant sitting atop the Senate dais, in the chair previously occupied by former Vice President Mike Pence, with his feet up on a the desk. Other CSPAN footage shows the defendant documenting paperwork from a Senator's desk on his cellphone.



In a separate video captured by U.S. Capitol Police ("USCP") closed circuit television ("CCTV") cameras of the events of January 6, 2021, the defendant is seen outside the Senate Gallery. The defendant is seen wearing jeans, with the same previously identified jean jacket, dark sweatshirt, and red hat, while holding what appears to be a baton in his right hand and a cellular phone in his left hand.



In the same video, the defendant is seen outside the Senate Chamber doors, in a physical altercation with U.S. Capitol Police plain clothes officer, still holding a baton in his hand. Specifically, the defendant can be seen shoving the officer, twice, in front of the door to the Senate Chambers. The defendant is then seen entering the Senate Chambers through the open door.



In another USCP CCTV video from the East Corridor of the Senate wing, the defendant is seen walking down the corridor wearing the same jean jacket, grey gloves, dark sweatshirt, and red hat. The defendant is seen carrying what appears to be a baton in his right hand and a cellular phone in his left hand.



During the same video, the defendant is seen attempting to open a brown door in this hallway. As he continues down the corridor, the defendant is observed wearing the same previously identified attire, including the dark sweatshirt with logo, while twirling a baton in his right hand.





    On or about January 8, 2021, the FBI received a tip identifying the defendant's Parler account, @PatriotBruno with name Brunocua, along with posts from the defendant's account.[3] In some of the posts, CUA referenced plans to travel to Washington, D.C. on January 6, 2021. As noted above, the government has subsequently received legal process from Parler with content from the @PatriotBruno account leading up to and after the events on January 6, 2021.

---

[3] Subsequent legal process to Parler has confirmed this account belongs to the defendant.

The defendant was arrested pursuant to a criminal complaint on February 5, 2021. During a search of the defendant's vehicle, home and person, law enforcement recovered three black batons, a red hat, a jean jacket like the one seen in the footage from January 6, 2021, and a red Apple iPhone like the one the defendant is seen using inside the Senate chamber.

### B.    Procedural Posture

A federal grand jury indicted the defendant on February 10, 2021.  The indictment charges the defendant with violating 18 U.S.C. § 231(a)(3) (Civil Disorder); 18 U.S.C. § 1512(c)(2), § 2 (Obstruction of an Official Proceeding Aiding and Abetting); 18 U.S.C. § 111(a)(1) (Assaulting, Resisting, or Impeding Certain Officers); 18 U.S.C. § 1752(a)(1) and (b)(1)(A) (Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon);  18 U.S.C. § 1752(a)(2) and (b)(1)(A) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon);  18 U.S.C. § 1752(a)(4) and (b)(1)(A) (Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon); 40 U.S.C. § 5104(e)(2)(A) (Entering and Remaining on the Floor of Congress); 40 U.S.C. § 5104(e)(2)(B) (Entering and Remaining in the Gallery of Congress); 40 U.S.C. § 5104(e)(2)(C) (Entering and Remaining in Certain Rooms in the Capitol Building); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); 40 U.S.C. § 5104(e)(2)(F) (Act of Physical Violence the Capitol Grounds or Buildings); 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building).

On February 10, 2021, the government argued for the defendant's detention at a motions hearing before Magistrate Judge Baverman in the Northern District of Georgia. Detention is authorized pursuant to 18 U.S.C. § 1342(f)(1)(E), (f)(2)(A), (f)(2)(B) of the Federal Bail Reform Act. The defense proffered the defendant's parents as adequate custodians for the defendant. After

two days of argument and testimony, including cross examination of the defendant's father Joseph Cua, Magistrate Judge Baverman granted the government's motion. Judge Baverman stated that the defendant's actions were in some ways more serious than the someone who has been arrested a number of times, who engages in violent behavior, assaultive behavior, anti-social behavior, because "what the defendant was involved in was effectively an attempt to overthrow the lawful processes of the United States." Exhibit 2, Hearing Tr. 02.12.21, 46:12-18.  Finally, the Court noted that "this is the first time in a number of years in a non-family drug case where the parents were maybe not instigators but aiders and abettors and didn't take steps to stop their child from going off the rails. That's one of the really, really problematic aspects of this case," and "I've rejected custodians far less involved in the criminal conduct of the defendant. *Id.,* 44: 23- 45:3; 45: 11-12. The Magistrate Judge determined that the defendant is a danger, and that there are no conditions or set of conditions that have been proposed that will reasonably assure the safety of the community. Nothing in the defense brief should convince this Court otherwise.

II.   **ARGUMENT**

   **A. Basis for Review and Legal Standard**

   The Court may proceed as best enables it to resolve the question posed:  whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community? As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than

merely danger of harm involving violence. . . .

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[4]

Defendant is subject to detention pursuant to 18 U.S.C. § 3142(f)(1)(E) because he possessed a dangerous weapon when he committed his crimes at the Capitol on January 6, 2021.  Additionally, the defendant is subject to detention pursuant to 18 U.S.C. § 3142(f)(2)(A) and (B), since he poses a serious risk of flight and a serious risk that he will obstruct justice, due to his indictment on an Obstruction count in violation 18 U.S.C. § 1512(c).

In determining whether the defendant should be detained, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's

---

[4] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

release. See 18 U.S.C. § 3142(g).

Though this Court's review of the detention matter is *de novo*,[5] the government urges the Court to adopt the findings of the Magistrate Court, who heard the facts presented at the two-day detention hearing in the Northern District of Georgia. In this case, there are no condition or combination of conditions that will reasonably assure the safety of the community if the defendant is released, and the government argues he must be held pending disposition in this matter.

**B.  The Bail Reform Act factors Strongly Support Incarceration**

As the Government argued at the detention hearing, and the Magistrate Judge held, there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community should the defendant be released, nor any assurance that the defendant will not flee from prosecution or obstruct judicial proceedings if released. An analysis of the § 3142(g) factors supports that argument.

**1.  <u>The Nature and Circumstances of the Offense Charged</u>**

A key factor to be considered when assessing the adequacy of release conditions is "the nature and circumstances of the crime charged."  Here, this factor is significant.  The crimes charged in the indictment involve active participation in an insurrection attempting to stop the regular functioning of the United States Government.  The defendant defied and assaulted law enforcement officers, stormed on to the Senate chamber floor, and stalked the halls of the U.S. Capitol with a dangerous weapon, looking for a fight. This factor strongly favors his detention.

The defense's attempts to minimize the conduct of this defendant by blaming the exhortations of the former President are of no moment here. See Def. Motion for Emergency Release, ECF No. 11,

---

[5] See *United States v. Chrestman,* 21-mj-218 (ZMF), ECF No. 23, at 10, n. 5, for review of Court of Appeals decisions uniformly endorsing a *de novo* standard of review.

at 3-5. Chief Judge Howell has already addressed the providence of an estoppel by entrapment defense, noting it is a narrowly tailored defense, available in very limited circumstances, and was not a defense which excused the conduct of a similarly-situated Capitol riot defendant. *Chrestman,* 21-mj-218 (ZMF), ECF No. 23, at 21. The limitations on this defense make it highly unlikely that the defendant will prevail, and should do little to outweigh the evidence currently proffered against him.

Moreover, rather than supply a reason for leniency, this argument that the defendant followed the orders of the former President bolsters the government's argument that the defendant would not obey the rule of law if released. The defendant has said multiple times that he came to Washington, D.C. on January 6th to "fight" for the former President. The defendant's actions in response to any misplaced belief about the 2020 Presidential election cannot be laid at the feet of anyone other than the defendant himself. The fact that the defendant was willing to participate in the actions of a mob which sought to subvert the will of the people in a free and fair election is proof that he cannot be trusted to refrain from violently promoting his political ends in the future. And his willingness now to pass the buck to others when the evidence of his wrongdoing is so strong, evinces with certainty the fact that he cannot be trusted to remain in the community.

Similarly, the defense argument blaming the violent rhetoric of others social media also fails to diminish the seriousness of this defendant's offense. ECF No. 11, at 4. The government has uncovered dozens, if not hundreds, of social media posts and private messages which, in the defendant's own words, display his callous disregard for the underpinnings of our Democracy and the rule of law. What greater insight into the mind of a defendant than his prior and contemporaneous statements about the crimes he was committing? To claim this dangerous rhetoric is the "idle chatter" of a "sheltered and vulnerable teenager" belies the truth behind those messages: we know the defendant meant what he said, because he acted on those messages when he stormed the Capitol on

January 6th with a dangerous weapon as part of an insurrectionist mob.

### 2.  The Weight of the Evidence Against the Defendant

The evidence against the defendant is overwhelming, including photographs and videos of his participating in the offenses alleged, including a video of him shoving a U.S. Capitol Police officer twice before entering the Senate Gallery. The government also has strong evidence of the defendant's intent through his own words on social media. His public posts and private messages not only confirm his illegal activities on the Capitol grounds that day, but affirm his intentions to violently stop those he disagrees with in the future. Therefore, this factor weighs in favor of detention.

### 3.  The History and Characteristics of the Defendant

The offenses committed by the defendant illuminate characteristics inconsistent with a person who could follow orders given by this Court, or indeed, any branch of the federal government. The defendant has espoused disbelief in the outcome of the 2020 Presidential election, and violently acted on that world view. The defendant clearly defied the orders of law enforcement officers who were trying to restore order at the Capitol, and indeed escalated the chaos and danger those members of law enforcement. When faced with the decision whether or not to obey law enforcement, the defendant chose to defy them, and cannot be trusted to follow orders of this Court as a result.

Additionally, the defendant has a strong social media presence, and where he has espoused his fringe, extremist, anti-government views. The defendant cannot be trusted to keep from inciting, contacting or coordinating with other radical extremists, intent on continuing to obstruct the normal functioning of our democracy. Given his participation in the obstruction of the normal functioning of the government, and his disbelief in the legitimacy of the current United States

government, it is unlikely that the defendant will obey any pretrial release conditions.

On top of this, the defendant's parents, his proposed custodians, have long ignored the warning signs that their son was a danger to their community in Georgia, as local police have come to the parent's house "roughly five or six times" to discuss their son's disorderly conduct and criminal activities, but have failed to curtail his behavior. See Exhibit 2, Hearing Tr. 02.12.21 , 9:18- 11:4. As proffered at the hearing in Georgia, many members of the Milton community reached out to the prosecution to ask that the defendant be denied bail, as these citizens felt he posed a danger and his parents did nothing to abate that danger.

The crimes charged in the indictment involve active participation in an insurrection attempting to stop the regular functioning of the United States Government.  By the defendant's own admissions on social media, the insurrection is still in progress and he intends to continue participating.  His past activities indicate that, should he be released, he would continue in this endeavor. This factor strongly favors detention.

### 4.  The Nature and Seriousness of the Danger to Any Person or the Community

Finally, the fourth factor, the nature and seriousness of any danger to the community, strongly favors detention. It bears repeating that the defendant was an active participant in the most violent insurrection to occur at the U.S. Capitol in over 200 years. Specifically, this defendant was part of a group of highly visible rioters, whose illegal activities were caught by national news media and published for the world to see. The defendant forcibly assaulted a police officer attempting to protect the seat of the federal government. Since January 6, the defendant has held himself out on social media as an enthusiastic participant in the insurrection movement, and has professed his intent on social to act in the future as he did at the Capitol on January 6, if not more

violently.   He is a danger to the continued operation of the federal government, the law enforcement officers dedicated to protecting that government, and to the community at large.

Finally, the defense proffers the defendant's parents as proper custodians, and claims that arguments "impugn[ing] the character of Mr. Cua's parents" are "largely based on their political beliefs." See Def. Motion, ECF No. 11, at 6. Yet, the defendant's motion fails to address the concerns raised by Judge Baverman that he did not "hear any consequences, zero consequences from the parents of the conduct of their son. Zero. So they are not effective custodians because they're after-the-fact mea culpas ring hollow because they exercised no parental consequences on their child when they realized that their child had engaged in counter-constitutional behavior." See Exhibit 2, Hearing Tr. 02.12.21 , 46:24- 47:4. It would not be a stretch to say these parents could be charged with crimes of their own, not merely for aiding and abetting the activities of their son, but for unlawful entry on the Capitol grounds if in fact, as the defendant's father testified under oath, they were present in the restricted area of the Capitol grounds on January 6, 2021. (A. We were on the grounds, you know, before all the stairs and all the scaffolding like out on the grounds area. Q. Concrete or grass? A. I think it was right at the concrete and grass, right where those -- the grass ended and concrete started. Exhibit 2, Hearing Tr. 02.12.21, 6:3-7)

An analysis of the factors under 18 U.S.C. § 3142(g) demonstrates that the Defendant should remain detained pending trial. As a result, the government respectfully opposes the defendant's emergency motion for pre-trial release.

Respectfully submitted,

MICHAEL SHERWIN
UNITED STATES ATTORNEY


___/s/_____
KIMBERLY  L. PASCHALL
Assistant United States Attorney
D.C. Bar 1015665
U.S. Attorney's Office
555 4th Street, N.W., Room 4116
Washington, D.C. 20530
202-252-2650
Kimberly.Paschall@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing opposition to the motion for release has been

served upon defense counsel, William Zapf and Jon Jeffress, by email and ECF/PACER

notification, on this day, March 2, 2021.


___/s/_____
KIMBERLY  L. PASCHALL
Assistant United States Attorney