**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-107 (RDM)** |
| **v.** | : | |
| | : | |
| **BRUNO JOSEPH CUA,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**COUNT TWO OF THE INDICTMENT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Bruno Joseph Cua's (hereinafter "the defendant") Motion to Dismiss Count Two of the Indictment, which charges him with obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2). In his motion, the defendant moves to adopt the pleadings in *United States v. Montgomery, et. al.* Case No. 21-cr-046 (RDM) and makes additional arguments regarding the interpretation of "official proceeding" through legislative history of 18 U.S.C. § 1512(a).

The defendant's arguments, and those adopted from *Montgomery*, must fail.[1] First, he claims that the indictment provides insufficient "notice" of the "proceeding before Congress" that he obstructed—namely, the Joint Session of Congress convened on January 6, 2021, to certify the Electoral College vote in the 2020 Presidential Election. The defendant also alleges that, in any event, the indictment fails to state a cognizable offense and attempts to convince the Court—

---

[1] The government responds fully here to both motions. Arguments made in *U.S. v. Montgomery* pleadings are noted as *Montgomery,* ECF No. 39. Arguments made in *U.S. v. Cua* pleadings are noted as *Cua,* ECF No. 84. The government respectfully requests that, if the Court accepts the defense motion to adopt all the pleadings from *United States v. Montgomery,* 21-cr-0046 (RDM) on this issue, that all of the government's responsive pleadings in *Montgomery*—ECF Nos. 41, 63, 76, 82–and arguments made at the hearing on the motion on August 3, 2021 be incorporated herein.

without authority—to circumscribe the nature of the offense to only prohibiting obstruction of congressional hearings that are related to the "administration of justice." But nowhere does the defendant address the fact that a Joint Session of Congress—a proceeding enshrined in and prescribed by the United States Constitution and federal law—plainly constitutes "a proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and therefore is an "official proceeding" under § 1512(c)(2). Recently, the Court in *United States v. Ronald Sandlin, et. al.*, No. 21-cr-88 (DLF), ECF No. 63, held that the Congressional certification of the 2020 Presidential Election results is an "official proceeding" as envisioned by 18 U.S.C. §1512(c)(2) and §1515(a). The defendant's motion is therefore unsupported by the law and facts of this case and should be denied.

## PROCEDURAL HISTORY

On January 29, 2021, defendant Bruno Joseph Cua was charged by complaint for his actions on January 6, 2021, when large crowds breached the U.S. Capitol Building (hereinafter "the Capitol") as Congress convened a Joint Session to certify the Electoral College vote in the 2020 Presidential Election. ECF No. 1. Shortly thereafter, on February 10, 2021, the Grand Jury returned an indictment charging the defendant with obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2), 2, along with assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1), civil disorder in violation of 18 U.S.C. § 231(a)(3), three charges of entering and remaining in restricted buildings or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A), § 1752(a)(2) and (b)(1)(A), and § 1752(a)(4) and (b)(1)(A), and six additional misdemeanor charges. ECF No. 7. On April 9, 2021, the Grand Jury returned a first superseding indictment in this case. ECF No. 32. On November 16, 2021, the defendant filed a motion to dismiss Count Two of the first superseding indictment which charges him with obstruction of an official proceeding, aiding and

abetting, in violation of 18 U.S.C. §§ 1512(c)(2), 2. ECF No. 84.  On December 1, 2021, the Grand Jury returned a second superseding indictment in this case. ECF No. 90.  On December 7, 2021, the defendant filed a motion to adopt, conform, and supplement motions and briefs to dismiss counts alleging violation of 18 U.S.C. § 1512(c)(2) as applicable to Count Two of the second superseding indictment.  ECF No. 94.   The government now opposes the defendant's dismissal motion.

## **FACTUAL BACKGROUND**

The statement of facts supporting the complaint against the defendant details at length the commencement of the Joint Session of Congress around 1:00 p.m. in the Capitol, the unlawful entry of crowd members into the Capitol without authorization, the suspension of the Joint Session while law enforcement worked to restore order and clear the Capitol of the unlawful occupants, and the resumption of the Joint Session around 8:00 p.m., approximately six hours after the crowd breached the Capitol.  ECF No. 1-1.

In short, the defendant wielded a baton on the grounds of the U.S. Capitol, stormed past officers at the door of the Upper West Terrace, and took part in an aggressive confrontation with U.S. Capitol Police Officers, who stood as the last line of defense before the Senate chamber. The defendant then rushed into the Senate gallery, leading a crowd of rioters behind him, and ultimately opened the doors to the Senate chamber to a flood of additional rioters. The defendant made his way to the Senate dais, sitting where the Vice President of the United States had been minutes before. The defendant had been advocating for violent protest weeks before January 6, 2021, posting on Parler and Instagram that this is an "open carry mission," rioters would "break down their doors and take our country back by force," and that everyone should "show up ready to fight."

ECF No. 12. After the events of January 6th, the defendant posted on social media that "[e]veryone who works in congress is a traitor to the people and deserves a public execution." ECF No. 12.

## LEGAL STANDARD

A defendant may move to dismiss an indictment or count thereof for failure to state a claim prior to trial.   *See* Fed. R. Crim. P. 12(b)(3)(B)(v).   "An indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged."   *United States v. Bowdin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011).   The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed.   *Id.*   An indictment must contain every element of the offense charged, if any part or element is missing, the indictment is defective and must be dismissed.   *See United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.D.C. 2017).

Section 1512(c)(2) of Title 18 of the U.S. Code provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." The "Definitions" provision, 18 U.S.C. § 1515, states that "[a]s used in section[] 1512, (1) the term 'official proceeding' means— (A) a proceeding before a judge or court of the United States … or a Federal grand jury; (B) a proceeding before the Congress; (C) a proceeding before a Federal Government agency which is authorized by law; or (D) a proceeding involving the business of insurance … before any insurance regulatory official or agency…." 18 U.S.C. § 1515(a)(1).

Federal Rule of Criminal Procedure 7(c)(1) governs the "Nature and Contents" of an indictment. The rule states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and that "[f]or

each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."

## ARGUMENT

The defendant's motion makes two arguments: (1) the indictment does not sufficiently apprise him of the crime with which he is charged; and (2) the certification of the Electoral College vote on January 6, 2021 is not an "official proceeding" contemplated by 18 U.S.C. 1512(c). Yet the defendant fails to grapple with the plain language of § 1515(a)(1)(B), which defines "official proceeding" in no uncertain terms as "a proceeding before the Congress," which is precisely what the defendant is charged with obstructing. Additionally, the defendant argues that an interpretation of the predecessor statute—18 U.S.C. 1512(a) (1982)—should guide the Court's analysis of the statute under which the defendant is charged—18 U.S.C. 1512(c)(2) (2008).  These arguments are without merit, and therefore the motion should be denied.

### A. The defendant has adequate notice of what "official proceeding" he is charged with obstructing.

A facially valid indictment is intended to guarantee at least two core constitutional protections. The first is notice, as provided by the Sixth Amendment: an "indictment's main purpose is to inform the defendant of the nature of the accusation against him." *United States v. Hillie*, 227 F. Supp. 3d 57, 69 (D.D.C. 2017) (citing *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001) (internal quotation marks and citation omitted). The second preserves the Fifth Amendment's protections against abusive criminal charging practices; specifically, that a criminal defendant can only be prosecuted for offenses that a grand jury has actually passed upon, and that a defendant who is convicted of a crime so charged cannot be prosecuted again for that same offense. *Id.* at 70 (citing *Stirone v. United States*, 361 U.S. 212, 218, (1960) (explaining that the Grand Jury Clause of the Fifth Amendment "limit[s] [a defendant's] jeopardy to offenses charged

by a group of his fellow citizens acting independently"); *see also Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1867 (2016) ("The Double Jeopardy Clause of the Fifth Amendment prohibits more than one prosecution for the 'same offen[s]e.'"). The test for sufficiency is whether it is fair to require the accused to defend himself on the basis of the charge as stated in the indictment. *United States v. Conlon*, 628 F.2d 150, 155 (D.C. Cir. 1980). Sufficiency depends upon whether the indictment "clearly informs the defendant of the precise offense of which he is accused so that he may prepare his defense." *Id*.

Here, Count Two of the indictment sufficiently informs the defendant of the basis of the charge against him. The indictment identifies the relevant date: January 6, 2021. ECF No. 90. It alleges the *mens rea* requirement from the statute. *Id.* And, most importantly for the present motion, it identifies the official proceeding he obstructed—namely, a proceeding before Congress, specifically Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§15-18. *Id.* That amply satisfies the dictates of Fed. R. Crim. 7(c).

Further, the defendant has received discovery in this case related to his conduct on January 6, 2021, to include the grand jury materials in this case disclosed pursuant to this Court's order. The indictment, and those materials, fully apprise the defendant of the proceeding that he allegedly obstructed—the Joint Session of Congress, which convened to certify the 2020 presidential election. See, e.g., *United States v. Williamson*, 2014 WL 12695537, at *7 (D.D.C. Oct. 20, 2014) ("If the indictment is sufficiently specific or if the requested information is available in some other form such as through discovery, then a bill of particulars is not required."). Because this was a Joint Session of Congress, it was the only Congressional proceeding occurring on the date alleged in the indictment, as a matter of public record. In light of this discovery, the defendant has ample

information to understand the nature of the charge against him, prepare his defense in this case, and identify any applicable double-jeopardy defense in a future proceeding.  No pleading defect accordingly exists in Count Two.

The defendant contends that the indictment is deficient because it "fails to allege what type of proceeding [the defendant] allegedly obstructed." *Montgomery,* ECF No. 39, at 3. But this contention is belied by his own admission that he is "*well aware* that the 'proceeding before Congress' that [he] allegedly obstructed was the certification of the electoral college vote for the 2020 Presidential Election." *Montgomery,* ECF No. 39, at 12-13 (emphasis added).  The defendant is "well aware" of that fact because he received ample notice from the indictment itself, as well as the criminal complaint, which devoted a page to detailing the commencement, disruption, and resumption of the Joint Session of Congress to affirm the Electoral College vote on January 6, 2021.  The defendant received further notice through discovery—where the government provided video of the defendant on the floor of the Senate on January 6, 2021, stating "they can steal an election, but we can't sit in their chairs?" He has received a superseding indictment, which states specifically that the defendant obstructed Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§15-18. ECF No. 90.  There is no basis for suggesting that defendant is unable to sufficiently understand what conduct he is being charged with or to prepare his defense.[2]

---

[2] Even if defendant had lacked notice, a Bill of Particulars and not dismissal would be the appropriate remedy where the indictment is facially valid.  *See United States v. Hajecate*, 683 F.2d 894, 898 (5th Cir. 1982); *United States v. Hillie*, 227 F. Supp. 3d 57, 81 (D.D.C. 2017).  But the defendant does not even meet the threshold for a Bill of Particulars, which requires that he "demonstrate surprise or prejudice by the lack of particularization."  *United States v. Pollack*, 534 F.2d 964, 970 (D.C. Cir. 1976); *see also United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987) ("[I]f the indictment is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required.").

Nor is there any defect in the indictment. To be sufficient under the Constitution, an indictment "need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014); *see United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007).   Federal Rule of Criminal Procedure 7(c) effectuates that understanding, requiring "a plain, concise, and definite written statement of the essential facts constituting the offense charged."   As this Court has stated, "'an indictment must contain every element of the offense charged *and* must fairly apprise the accused *of the conduct allegedly constituting the offense* so as to enable him to prepare a defense against those allegations.'"   *Hillie*, 227 F. Supp. at 81 (emphases in original).

The indictment here readily meets this standard.   Section 1512(c)(2) penalizes a person who "corruptly obstructs, influences, or impedes any official proceeding."   Count 2 of the indictment provides that:

> On or about January 6, 2021, within the District of Columbia and elsewhere, Bruno Joseph Cua, attempted to, and did corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18, and aided abetted others known and unknown to do the same.

ECF No. 90.  The indictment thus sets forth all essential elements of the offense.

The defendant's relieance on *Hillie* to argue that the indictment here is deficient is misplaced.  The challenged indictment in *Hillie* only broadly stated the date of the offenses as "periods of time that span two to three years," the location of the offenses as "the District of Columbia," and was "devoid of any facts regarding the circumstances of Hillie's behavior" that led to the charges.  *Id.* at 71-72.  Here, the indictment against the defendant not only tracks and echoes the statute, but also specifies the date of the obstruction ("January 6, 2021"), and the type

of official proceeding ("specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States").  *See Resendiz-Ponce*, 549 U.S. at 108 (upholding sufficiency of indictment that echoed statute while specifying time and place of the offense and identity of the threatened officer); *United States v. Williamson*, 903 F.3d 124, 131 (D.C. Cir. 2018) (same).   The defendant is in no way uncertain about what conduct "allegedly constitut[es] the offense."  *Hillie*, 2127 F. Supp. 3d at 81.  And he is in no way unable to prepare a defense or invoke double jeopardy if he were prosecuted again for the same conduct.

The defendant further claims that the indictment's reference to the "official proceeding" as "a proceeding before Congress" must be *further* specified to state the particular proceeding before Congress on January 6, 2021 that he is accused of obstructing.  *Montgomery,* ECF No. 39, at 3. The superseding indictment does just that. ECF No. 90. But statutory and case law does not require such minutia. For example, in *United States v. Williamson*, Williamson was charged with "threatened assault with intent to retaliate against the officer on account of the performance of official duties." The D.C. Circuit explained that *which* "official duty" was at issue was "not at all 'central to every prosecution under the statute'" nor "'the very core of criminality' under the statute."  903 F.3d at 131; *see also Resendiz-Ponce*, 549 U.S. at 108-09 (indictment's "word 'attempt'" adequately encompassed "three overt acts" performed in the attempt; overt acts did not need to be specified).   The statute was written "not to draw attention to a particular official duty, but to assure that the threat generally relates to the officer's performance of official duties rather than to a personal dispute."  *Williamson*, 903 F.3d at 131.   Here too, a "proceeding before Congress" serves to generally ensure that the defendant knows what type of enumerated "official proceeding" he is charged with obstructing.  The defendant has received that notice here, so there

was no infirmity in the indictment.  The language fairly informed defendant of the charge against him in accordance with both the Constitution and Rule 7(c).

**B. The certification of the Electoral College vote is an official proceeding.**

The defendant argues (*Montgomery*, ECF No. 39, at 3-14) that Congress's certification of the Electoral College vote on January 6, 2021, does not qualify as an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2).  That argument lacks merit.

1. Background

The Constitution and federal statutory law require that both Houses of Congress meet to certify the results of the Electoral College vote.  Two separate provisions in the Constitution mandate that the Vice President, while acting as the President of Senate, "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted."  U.S. Const. art. II, § 1, cl. 3; U.S. Const amend. XII.  Under the Electoral Act of 1887, a Joint Session of the Senate and the House of Representatives must meet at "the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors."  3 U.S.C. § 15.  Section 15 details the steps to be followed: the President of the Senate opens the votes, hands them to two tellers from each House, ensures the votes are properly counted, and then opens the floor for written objections, which must be signed "by at least one Senator and one Member of the House of Representatives."  *Id.*  The President of the Senate is empowered to "preserve order" during the Joint Session.  3 U.S.C. § 18.  Upon a properly made objection, the Senate and House of Representatives withdraw to consider the objection; each Senator and Representative "may speak to such objection . . . five minutes, and not more than once."  3 U.S.C. § 17.  The Electoral Act, which specifies where within the chamber Members of Congress are to sit, requires that the Joint Session "not be dissolved until the count of electoral votes shall be completed and the result declared."  3 U.S.C. § 16.

The obstruction statute with which defendant is charged prohibits corruptly obstructing, influencing, or impeding any official proceeding.  18 U.S.C. § 1512(c)(2).  An official proceeding for purposes of § 1512(c)(2) is defined as:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) *a proceeding before the Congress*;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C. § 1515(a)(1) (emphasis added).

2.   Certification of the Electoral College vote is a proceeding before the Congress

The certification of the Electoral College vote as set out in the Constitution and federal statute is a "proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and, therefore, an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2).  That conclusion flows principally from the obstruction statute's plain text.  And to determine the meaning of "official proceeding," the Court must start with the text. See *Robinson v. Shell Oil Co*., 519 U.S. 337, 340 (1997).

Understanding what qualifies as an official proceeding "depends heavily on the meaning of the word 'proceeding'" because "official proceeding" is defined "somewhat circularly" as, among other things, a congressional "proceeding."  *See United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013).  The certification of the Electoral College vote constitutes a "proceeding" under any interpretation of that term.  In its broadest and most "general sense," a proceeding refers to "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior."

*Id.* (quoting *Proceeding,* Oxford English Dictionary, *available at* http://www.oed.com).   The defendant does not meaningfully contend that the certification of the Electoral College vote, which involves a detailed "series of actions" outlining how the vote is opened, counted, potentially objected to, and ultimately certified, is not a proceeding—and indeed an official proceeding— under that broad definition.   And there is good reason to construe "proceeding" as used in 18 U.S.C. § 1515 broadly.   Section 1515's text encompasses not only congressional proceedings, but judicial proceedings, grand jury proceedings, any legally authorized proceedings before federal government agencies, and proceedings "involving the business of insurance." 18 U.S.C. § 1515(a)(1); *see* S. Rep. No. 97-532, at 17 (1982) (noting that the "term 'official proceeding'" in the obstruction statute is "defined broadly").

But even if the "legal—rather than the lay—understanding" of proceeding governs Section 1515's interpretation, *see Ermoian*, 752 F.3d at 1170, the Electoral College vote certification qualifies.   This narrower definition includes the "business conducted by a court or other official body; a hearing."   Black's Law Dictionary, "proceeding" (11th ed. 2019).   Taken with its modifier "official," the term proceeding thus "connotes some type of formal hearing." *Ermoian*, 752 F.3d at 1170; *see United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008) (the "more formal sense" of "official proceeding" is "correct in the context of § 1512").   For example, in cases assessing whether a law enforcement investigation amounts to an "official proceeding" as defined in Section 1515—including the cases relied upon by the defendant—courts analyze the degree of formality involved in an investigation.  *See, e.g.*, *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019) (FBI investigation not an "official proceeding" because that term "implies something more formal than a mere investigation"), *cert. denied*, 140 S. Ct. 1106 (2020); *Ermoian*, 752 F.3d at 1170-72 (same); *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (internal investigation

conducted by a review panel within the Bureau of Prisons was an "official proceeding" because the review panel's "work [was] sufficiently formal"); *Ramos*, 537 F.3d at 463 (internal investigation conducted by Customs and Border Patrol not an "official proceeding" because that term *"*contemplates a formal environment"); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006) (investigation conducted by Bureau of Alcohol, Tobacco, and Firearms not an "official proceeding" because that term encompasses "events that are best thought of as hearings (or something akin to hearings)"); *see also United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (holding that a "*formal* investigation" conducted by the Officer of the Inspector General at the Agency for International Development qualified as a "proceeding" for purposes of 18 U.S.C. § 1505) (emphasis added). The Court in *Sandlin* agreed with this reasoning. See *Sandlin*, 21-cr-88 (DLF), ECF No. 63, at 6-7.

The formality involved in the certification of the Electoral College vote places it "comfortably within the category" of an official proceeding. *See Perez*, 575 F.3d at 169, *see also Sandlin,* at 6-7. Few events are as solemn and formal as a Joint Session of the Congress. That is particularly true for the certification of the Electoral College vote, which is expressly mandated under the Constitution and federal statute. Required by law to begin at 1:00 p.m. on the January 6 following a presidential election, the certification of the Electoral College vote is both a "hearing" and "business conducted by . . . [an] official body." *See* Black's Law Dictionary, *supra*. The Vice President, as the President of the Senate, serves as the "presiding officer" over a proceeding that counts votes cast by Electors throughout the country in presidential election. 3 U.S.C. § 15. As in a courtroom, Members may object, which in turn causes the Senate and House of Representatives to "withdraw" to their respective chambers so each House can render "its decision" on the objection. *Id.* And just as the judge and parties occupy specific locations in a

courtroom, so too do the Members within the "Hall." *See* 3 U.S.C. § 16 (President of the Senate is in the Speaker's chair; the Speaker "immediately upon his left"; the Senators "in the body of the Hall" to the right of the "presiding officer"; the Representatives "in the body of the Hall not provided for the Senators"; various other individuals "at the Clerk's desk," "in front of the Clerk's desk," or "upon each side of the Speaker's platform"). The Electoral College vote certification, moreover, must terminate with a decision: no recess is permitted until "the count of electoral votes" is "completed," and the "result declared." *Id.* The Joint Session "thus has the trappings of a formal hearing before an official body." *Sandlin*, ECF No. 63, at 7.

3. The "proceeding before Congress" is not limited to proceedings solely related to the administration of justice

The defendant incorrectly asks this Court to limit the interpretation of the "proceeding before the Congress" to encompass only the "corrupt obstruction of proceedings before Congress related to the administration of justice such as a congressional committee investigating a violation of the law where witnesses are subpoenaed to appear and give testimony or to provide relevant evidence." *Montgomery,* ECF No. 39, at 13. But this narrow reading of the statute finds no textual support when applied to Section 1515(a)(1)(B), which speaks broadly of a proceeding "before the Congress." See *Sandlin,* at 8 (citing *Bates v. United States*, 522 U.S. 23, 29 (1997) ("we ordinarily resist reading words or elements into a statute that do not appear on its face.")). Had Congress wanted to import a definition that more closely resembled a quasi-adjudicative setting, as the defendant contends, it needed look only a few provisions away to 18 U.S.C. § 1505, which criminalizes obstruction of "the due and proper administration of the law under which any pending proceeding is being had" by a federal department or agency. Indeed, § 1505 expressly criminalizes obstruction of "any inquiry or investigation [that] is being had by" Congress, including by congressional committees and subcommittees. 18 U.S.C. § 1505; *see United States v. Bowser*, 964

14

F.3d 26, 31 (D.C. Cir. 2020).  If Congress could limit the obstruction prohibition under § 1505 to congressional investigations, it could have done so in the text of § 1515(a)(1)(B).  But it did not. Instead, Congress enacted broader language—"a proceeding before the Congress"—to cover a broader range of proceedings than the "inquir[ies] and investigation[s]" envisioned in Section 1505.  That broader definition includes the Electoral College vote certification.

Rather than engage with Section 1515's text, the defendant relies on "surrounding statutory provisions" and "legislative intent" to argue that the certification of the Electoral College vote is not an "official proceeding" because it does not affect the "administration of justice." *Montgomery,* ECF No. 39, at 8-12. That approach fails in three respects.  First, it is methodologically flawed. To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning."  *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)).  In ordinary parlance, a gathering of the full Congress to certify the Electoral College vote is a congressional proceeding, a proceeding before the Congress.  Because Section 1515(a)(1)(B)'s words "are unambiguous, the judicial inquiry is complete."  *See Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation marks omitted). The defendant offers no rationale for breezing past the statute's plain text to reach for other interpretive tools.

Second, the other statutory tools on which the defendant purports to rely does not aid his argument.  The defendant contends (*Montgomery,* ECF No. 39, at Mot. 8) that Section 1512's title—"Tampering with a witness, victim, or an informant"—implies that the "official proceeding" definition in Section 1515 does not cover the Electoral College vote certification.  But this contention runs headlong into "the wise rule" that neither "the title of a statute" nor "the heading of a section" can "limit the plain meaning of the text."  *Brotherhood of R.R. Trainmen v. Baltimore*

& *Ohio R. Co.*, 331 U.S. 519, 528-29 (1947).[3]   As the *Sandlin* decision notes, because § 1512(c) was placed in a pre-existing provision, and the title was not altered to reflect the new subsection's focus, "[t]he titles therefore offer no gloss on subsection (c)(2)'s plain meaning." *Sandlin*, ECF No. 63, at 14. In any event, the specific statutory provision under which the defendant is charged, 18 U.S.C. § 1512(c)(2), explicitly reaches more broadly than tampering: it "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense.  *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2104)).

Other provisions outside § 1512, such as those elsewhere in Chapter 73, have even less bearing on the plain meaning of § 1512(c)(2).  *Montgomery,* ECF No. 39, at 10.  If anything, those neighboring provisions—which criminalize obstruction of other types of investigations and protect judges, jurors, witnesses and the like—merely underscore how robustly Congress sought to penalize obstructive conduct across a vast range of settings.  That Congress wished to penalize efforts to obstruct everything from a federal audit to a bankruptcy case to an examination by an insurance regulatory official only crystalizes that it is more the acts of obstructing, influencing, or impeding—than the particular type of hearing—that lie at "'the very core of criminality' under the statute[s]." *Williamson*, 903 F.3d at 131.

---

[3] The defendant's invocation of the Justice Manual similarly has no bearing on the Court's analysis. The USAM (the previous name of the Justice Manual) "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." *United States v. Goodwin*, 57 F.3d 815, 818 (9th Cir. 1995) (quoting USAM §1-1.100). *Cf. United States v. Caceras*, 440 U.S. 741, 754 (1979) (IRS manual does not confer any substantive rights on taxpayers but is instead only an internal statement of penalty policy and philosophy).

Additionally, the defendant requests that the Court look to a Senate Judiciary Committee Report from 1982[4] (S. Rep. 97-532, at *16 & n.7 (1982)), for clarity as to the meaning of the terms in §1512. *Cua,* ECF No. 84, at 2. Not only does this argument violate the directive to Courts not to "invoke the statute's supposed purpose or legislative history to create ambiguity where none exists," *Sandlin*¸ ECF No. 63, at 16-17; s*ee also*, *United States v. Griffin*, No. 21-cr-00092, 2021 WL 2778557, at *4 (D.D.C. July 2, 2021) (citing *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011)); *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994), it does not even reflect the language found in § 1512(c) itself. The defendant's own motion notes that the Commission Report's recommended definition of official proceeding did not make it into the statutory language as it is currently written. *Cua*, ECF No. 84, at 7 ("Although Congress did not explicitly adopt the definition of 'official proceeding' from the Commission Report, its considered adoption of the same structure and language of the operative sections of the Report, as stated in the Senate Judiciary Committee Report—including the differentiation between obstruction of justice before and after an investigation is concluded and an official proceeding is instituted—supports limiting the definition of "official proceeding" in section 1512 to proceedings at which evidence is taken."). This logic is especially convoluted given that Congress did in fact adopt other operative sections of the Report. *Cua*, ECF No. 84, at 7. This Court should not infer a meaning expressly not adopted by Congress, simply because it considered doing so.

Finally, the defendant's narrowed reading of "proceeding before the Congress" in 18 U.S.C. § 1515(a)(1)(B)—importing an extra-textual "administration of justice" requirement—would undercut the broad statute that Congress enacted.  Other than a reference to "a congressional

---

[4] More specifically, the defendant invokes the Final Report of the National Commission on Reform of Federal Criminal Laws ("the Commission Report"), which the Senate Judiciary Committee referred when discussing the legislation that eventually became 18 U.S.C. § 1512.

committee investigating a violation of the law where witnesses are subpoenaed to appear and give testimony or to provide relevant evidence,"[5] *Montgomery,* ECF No. 39, at 13, the defendant does not explain which congressional proceedings would fall within the ambit of his narrowed definition.  That crabbed approach fails to recognize that the certification of the Electoral College vote is an official proceeding that is "crucial to the conduct of government" and therefore "entitled to go forward free of corrupting influences that not only delay [it] but increase the chances of false and unjust outcomes."  *Sutherland*, 921 F.3d at 426.  Whatever the outer limits of a "proceeding before the Congress" for purposes of the obstruction statute, the Electoral College vote certification falls well within them.[6]

The decision in *Sandlin* deals with this question by contrasting § 1512(c) with § 1503. *Sandlin*, ECF No. 63, at 8. Under 18 U.S.C. § 1503, it is unlawful to "*corruptly* or by threats or force, or by any threatening letter or communication, *influence[], obstruct[], or impede[]*, or endeavor[] to influence, obstruct, or impede, *the due administration of justice*." *Id.* This provision includes the same *mens rea* term ("corruptly") and verbs (influence, obstruct, impede) as does §

---

[5] The defendant does not grapple with the anomalous result that follows from his argument: an investigation by a committee—not even a full House, let alone both Houses—would qualify as a "proceeding before the Congress," but a constitutionally required Joint Session to resolve disputes over and ultimately certify the result of a presidential election would not.

[6] Defendant's challenge fails even if he were correct—and he is not—that for a proceeding to constitute an "official proceeding" under the obstruction statute, that proceeding must be related to the "administration of justice."  Far from informal, the certification of the Electoral College vote comprises features that resemble an adjudicative proceeding.  It involves the convening of a Joint Session of Congress, a deliberative body over which a government officer, the Vice President as President of the Senate, "presid[es]."  3 U.S.C. § 15.  That body convenes to render judgment on whether to certify the votes cast by Electors in the presidential election.  As in an adjudicative setting, parties may lodge objections to the certification, and if any such objection is lodged, each House must consider the objection and make a "decision" whether to overrule or sustain it.  *Id.* And just as a jury does not (barring a mistrial) recess until it has a reached a verdict, the Joint Session cannot "be dissolved" until it has "declared" a "result."  3 U.S.C. § 16.

1512(c)(2). *Id.* Yet § 1503 targets "the due administration of justice," whereas § 1512(c)(2) targets official proceedings more broadly. *Id.* Considering this difference in subject matter, the Court should not treat "administration of justice" and "official proceeding" as synonymous. *Id.*, at 8-9, citing *Russello v. United States*, 464 U.S. 16, 23 (1983).

## CONCLUSION

In short, defendant is well aware of the official proceeding he obstructed—namely, the Joint Session of Congress convened on January 6, 2021, to certify the Electoral College vote in the 2020 Presidential Election.  And that Joint Session of Congress to certify the Electoral College vote constitutes a "proceeding before the Congress."  The defendant's conduct falls squarely within the ambit of 18 U.S.C. § 1512(c)(2).

WHEREFORE, the United States respectfully requests that defendant's Motion to Dismiss be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:   ___/s/_____
KIMBERLY L. PASCHALL
Assistant United States Attorney
Federal Major Crimes Section
D.C. Bar No. 1015665
555 4th Street, N.W.,
Washington, D.C. 20530
202-252-2650
Kimberly.paschall@usdoj.gov