## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

**v.**

**BRUNO JOSEPH CUA**

**Criminal Action No. 21-00107 (RDM)**

## REPLY IN SUPPORT OF MOTION TO ADOPT, CONFORM, AND SUPPLEMENT MOTIONS AND BRIEFS TO DISMISS COUNTS ALLEGING VIOLATION OF 18 U.S.C. § 1512(C)(2) IN OTHER CASES AS APPLICABLE TO COUNT 2 OF THE SECOND SUPERSEDING INDICTMENT

Bruno Joseph Cua, through undersigned counsel, respectfully submits this reply brief in support of his motion to adopt, conform, and have the benefit of certain motions, objections, responses, replies, other briefs, and supporting arguments filed and presented by other defendants before this Court to dismiss counts alleging violations of 18 U.S.C. § 1512(c)(2), as applicable to Count 2 of the second superseding indictment against Mr. Cua. *See* ECF No. 94. Mr. Cua incorporates by reference the arguments and authorities included in his motion filed previously at ECF No. 84 in this case, which in turn requests to adopt, conform, and have the benefit of prior papers and argument filed with and presented to this court in other cases regarding dismissal of counts alleging violation of section 1512(c)(2). To the extent this reply brief does not specifically address points raised in the government's opposition brief, *see* ECF No. 98 (hereinafter, "Opp."), it incorporates by reference such relevant arguments from other arguments presented to this court in this and other cases.

**A.      The Court should grant the unopposed procedural aspect of Mr. Cua's motion and expressly permit him to adopt, conform, and have the benefit of motions and argument presented in other cases.**

As a preliminary matter, the government has not provided any reason to deny the procedural aspect of Mr. Cua's motion: that he be permitted to adopt, conform, and have the benefit of prior papers and argument filed with and presented to this court in other cases pending before this Court regarding dismissal of counts alleging violations of section 1512(c)(2). *See* ECF No. 98 at 1 n.1. Accordingly, Mr. Cua reiterates his request that the Court enter an order so stating. If the Court does so, Mr. Cua does not oppose the government's request that its responsive pleadings from *United States v. Montgomery, et al.*, 21-cr-0046 (RDM), on this issue be incorporated by reference in its opposition. *See id.*

**B.      The government fails to grasp the correct meaning of "official proceeding" by taking the statutory definition at face value without considering the context in which it was enacted.**

At bottom, the government's position is that the bare text of section 1515(a)(1)(B) controls the meaning of "official proceeding"—that in enacting section 1512(c)(2), Congress intended to subject anyone who "corruptly . . . obstructs, influences, or impedes" any "proceeding before Congress" in any manner—which, in the government's view, includes the certification of the Electoral College vote—is subject to up to twenty years in prison. Never mind the fact that there are other statutes already on the books—including misdemeanors that have been used to prosecute others who have interrupted congressional proceedings and even other defendants involved in the events of January 6, 2020, which encompass the type of conduct at issue here. Rather, the government contends that Congress intended to hand prosecutors the hammer of a 20-year prison sentence to bring down as they see fit when someone "corruptly" impedes any congressional proceeding. But the bare text should not end the inquiry in this case.

Contrary to the government's argument, however, Mr. Cua does not "breez[e] past the statute's plain text to reach out for interpretive tools." Opp. at 15. As the government observes, the statutory definition is circular. *Id.* at 11 (citing *United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013)). By defining "official proceeding" as including any "proceeding before Congress" (or any court or governmental agency), section 1515(a)(1) is wholly unhelpful in understanding what the term means within the statute, other than specifying the bodies before which the subject proceeding could take place, i.e., just about anywhere in the three branches of government if read literally. Indeed, as the government latches onto, by defining "official proceeding" as any "proceeding," the statutory definition could be read as eliminating the word "official" from the statute completely, covering any "carrying on of an action or series of actions," regardless of the level of formality or solemnity. *See* Opp. at 11-12 (quoting *Proceeding*, Oxford English Dictionary). Nevertheless, whether helpful for interpretation or not, Mr. Cua recognizes that Congress *did* supply a definition. But, rather than cast aside the text of the statute in favor of a battle of dictionary definitions, Mr. Cua has delved further into the structure and history of the statute to discern Congress's intent by adopting that seemingly broad definition.

The key to understanding Congress's intent in defining "official proceeding" to include "any proceeding before Congress," and why the term should not be interpreted in its most literal sense ("legal" or "lay"), is the context in which the definition was enacted. "When aid to the construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'" *United States v. American Trucking Assocs., Inc.*, 310 U.S. 534, 543-44 (1940) (footnotes omitted). As Judge Frank Easterbrook, a well-known textualist, has explained in

attempting to reconcile the various and sometimes contradictory directives from the U.S.

Supreme Court on the use of legislative history:

> The answer lies in distinguishing among uses of legislative history. . . . To decode words one must frequently reconstruct the legal and political culture of the drafters. Legislative history may be invaluable in revealing the setting of the enactment and the assumptions its authors entertained about how their words would be understood. It may show, too, that words with a denotation "clear" to an outsider are terms of art, with an equally "clear" but different meaning to an insider. It may show too that the words leave gaps, for short phrases cannot address all human experience; understood in context, the words may leave to the executive and judicial branches the task of adding flesh to the bones. These we take to be the points of cases such as *American Trucking* [quoted *supra*] holding that judges may learn from the legislative history even when the text is "clear". Clarity depends on context, which legislative history may illuminate.

*In re Matter of Sinclair*, 870 F.2d 1340, 1342 (7th Cir. 1989). Given that the text of the statutory

definition in this case is otherwise unhelpful on its face, delving into the original structure of the

statute and legislative history does not violate any interpretive rule, to the extent any would

bind the court's analysis in any event, and may assist in illuminating the term's meaning.

The definition of "official proceeding" was enacted in 1982, about twenty years before

subsection 1512(c)(2) was added to the code. Thus, the Court should look to understand the

meaning of "official proceeding" within the context of the original statute, and not through the

lens of section 1512(c)(2), which merely adopted its original meaning. Congress has given no

indication that it intended to alter the meaning of "official proceeding" after the original

enactment—indeed, it has not amended the statutory definition—and none should be inferred.[1] If

---

[1] The government argues, for example, that the code section's title—"Tampering with a witness, victim, or an informant"—cannot overcome the plain meaning of the text. Opp. at 15. In doing so, the government cites the court's reasoning in *Sandlin*, pointing out that section 1512(c)(2) was placed in a pre-existing provision without altering the title. *Id.* at 16. This argument misses the point. The definition of "official proceeding" was enacted in 1982, along with the original title, not in 2002, with section 1512(c)(2). The Court must determine what Congress intended "official proceeding" to mean when it was enacted in 1982. The title is relevant to the context in which the definition was enacted.

it is read in proper context, with knowledge of the circumstances in which it was drafted and enacted, it becomes readily apparent that the definition's text appears sweeping only because Congress intended it to be sweeping *within the context and subject matter of interference with victims and other witnesses*, i.e., proceedings involving the presentation of evidence, including in relation to such types of proceedings before Congress. No further specification was given in the text as to the types of proceedings because it could not have been contemplated that such specification would be needed within the context of the original statute, which addresses tampering with witnesses.

The original statute that included the definition of "official proceeding" is titled the "Victim and Witness Protection Act of 1982." P.L. 97-291 (Oct. 12, 1982). Its stated purpose was "to enhance and protect the necessary role of crime victims and witnesses in the criminal justice process." *Id.* § 2(b)(1). *See also id.* Preamble ("to provide additional protections and assistance to victims and witnesses in Federal cases.") The statute as enacted also included findings, including: "Without the cooperation of victims and witnesses, the criminal justice system would cease to function; yet with few exceptions these individuals are either ignored by the criminal justice system or simply used as tools to identify and punish offenders." *Id.* § 2(a)(1). It further found: "Under current law, law enforcement agencies must have cooperation from a victim of crime and yet neither the agencies nor the legal system can offer adequate protection or assistance when the victim, as a result of such cooperation, is threatened or intimidated." *Id.* § 2(a)(4).

Turning to the substance of the statute, section 4 of the Act, which included the original section 1512 and the definition of "official proceeding" in section 1515 was titled "Protection of Victims and Witnesses from Intimidation." *Id.* § 4. As reviewed in extensive detail in Mr. Cua's

motion, the original section 1512 addressed interference with evidence (both potential witness testimony and physical evidence ("objects") for use in an "official proceeding," on the one hand, and communications with a law enforcement officer or judge of information relating to the commission of a crime. *See* generally id. § 4. In this limited original context, the definition of "official proceeding" could not be understood to apply to governmental "proceedings" writ large that have no relation to the taking of evidence.

Turning to the legislative history, the government is correct that the 1982 Report of the Senate Judiciary Committee states that "official proceeding" is "defined broadly." *See* Opp. at 12 (citing S. Rep. No. 97-532, at 17 (1982)). But the question is still one of context. Like the enacted statute, the Report states that the purpose of the statute was: "to strengthen existing legal protections for victims and witnesses of federal crimes." S. Rep. No. 97-532 at 9. As observed:

> The victim or witness has little hope or protection from the government if he is harassed or threatened by the defendant out on bail, or the defendant's friends or family; or if the convicted criminal, after serving his time, decides to retaliate against the individual who assisted the government. This insensitivity and lack of concern for the victim and witness is a tragic failing in our criminal justice system . . . . Without the cooperation of victims and witnesses, the criminal justice system would simply cease to function and few criminals, if any, would be brought to justice.

*Id.* at 10. Thus, it is the harassment, threats, and retaliation against *witnesses* that the statute clearly sought to target.

The Judiciary Committee further explained the intended scope and structure of the statute:

> Section 1512 applies to offenses against witnesses, victims, or informants which occur *before the witness testifies or the informant communicates with law enforcement officers*, while section 1513 applies to offenses against witnesses or informants after they have testified or reported information about the crime to law enforcement officers. Section 1514 and 1515 provide definitions and penalties for an offense committed while on release pending judicial proceedings.

*Id.* at 14 (emphasis added). This structure is consistent with Mr. Cua's argument that use of the term "official proceeding" in the statute was designed to contrast with similar actions taken against witnesses (called "informants" here) during an investigation, prior to the institution of an "official proceeding." *See, e.g.*, ECF No. 84 at 4-5.

As to the inclusion of proceedings before Congress in the definition of "official proceeding" for a statute that dwells so much on judicial proceedings, the Judiciary Committee Report addresses this as well. It expressly states (twice) an intention that the statute address situations involving "the exercise of a legislative power of inquiry," *id.* at 17, 19, a reference that, in the context of the Report, undoubtedly relates to Congress's power to summon witnesses to appear and testify under oath. In this manner, what at first glance appears to be a massively broad definition of "official proceeding" in section 1515 becomes much narrower within the context in which it was enacted. This background shows that Congress did, in fact, want the definition to be broad, but broad in the sense that it wanted the statute to cover victim and witness obstruction across all possible contexts involving victims and witnesses, including proceedings before Congress.

As to the government's highlight of section 1503, addressing corrupt obstruction of the "due administration of justice," Opp. at 18, the Senate Report addresses this as well by explaining the shortcomings of section 1503, as well as other existing provisions, and the reasons for enacting new provisions. The report recognized that several sections of then-existing law "relate to coercive acts intended to tamper with witnesses and informants in official proceedings," including section 1503's criminalization of influencing or injuring a witness. S. Rep. No. 97-532 at 14. It explains, however, that existing provisions like section 1503 have lower punishments and require "relatively high threshold[s] of seriousness for commission of a

crime." *Id.* at 14. Moreover, it highlights, "Section 1503 relates to witnesses in criminal

proceedings, but only applies to witnesses under subpoena in cases which are still active . . . ."

*Id.* The Report further observes that there had been "ambiguity about who would constitute a

witness," potentially leaving out witnesses who may not end up testifying, which section 1512

would address. *See id.* at 15. In this sense, there may be overlaps with section 1503, but the fact

that section 1503 addresses administration of justice does not support the government's proposed

reading of "official proceeding."

 In sum, the government's analysis is incomplete. The definition of "official proceeding"

in section 1515 was enacted within the context of the overall statute in 1982 and cannot be

understood without examining that context. What becomes clear is that the use of the term

"official proceeding" was meant to differentiate such proceedings from informal investigations

involving the same types of issues relating to the gathering and presentation of evidence, whether

before a court, Congress, or government agency. Given this context, there would be no reason

for Congress to consider adding additional details specifying that the term is limited to

proceedings at which testimony or evidence is taken.

**C.**  **Section 1512(c)(2) is vague as applied to Mr. Cua, as charged in Count 2 of the second superseding indictment.**

 As already raised in *Montgomery* (and adopted by Mr. Cua), the government's proposed

interpretation renders section 1512(c)(2) unconstitutionally vague as applied to the defendant,

based on the allegations in the second superseding indictment. *See* ECF No. 60 at 26-41; ECF

No. 66 at 8-21. Since Mr. Cua filed his original motion, Judge Friedrich has recognized that

section 1512(c)(2) may be vague as applied to a particular defendant with a charge that is

substantively identical to Mr. Cua in relation to the events of January 6, 2020.

> In contrast to the indictment at issue in Sandlin, the Indictment in this case
> does not allege any facts in support of the § 1512(c)(2) charge. Count Two

> merely alleges that Reffitt "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18."

*United States v. Reffitt*, 1:21-cr-00032-DLF, Minute Order (D.D.C. Dec. 11, 2021). Stating that "it is unclear, based on the indictment alone, what actions Reffitt allegedly engaged in to obstruct and impede the official proceeding," Judge Friedrich directed the defendant to file a supplemental brief explaining why the Court should not defer ruling on his motion until the evidence has been presented at trial. *Id.* That issue has now been fully briefed and awaits the Court's decision.[2]

In contrast, in *Sandlin*, a conspiracy case, Judge Friedrich reasoned:

> The indictment in this case alleges obstructive acts that fall on the obviously unlawful side of the line. It alleges that the defendants obstructed and impeded the congressional proceeding to certify the election results. And it further alleges that the defendants engaged in advance planning, forcibly breaching the Capitol building, assaulted Capitol police officers, and encouraged others to steal laptops and paperwork from the Senate Chamber.

*United States v. Sandlin*, et al., 1:21-cr-00088-DLF, ECF No. 63 at 24-25 (internal citations omitted). In so summarizing the allegations, the court in *Sandlin* cited nineteen detailed paragraphs of allegations concerning the conspiracy charge against Messrs. Sandlin and DeGrave. *See id.* at 25 (citing Superseding Indictment ¶¶ 15-33). The Court then concluded that such conduct, as alleged, "is both 'independently criminal' . . . and 'inherently malign.'" *Id.* (quoted citations omitted). Given these allegations, the Court concluded that "the defendants were sufficiently on notice that they corruptly obstructed, or attempted to obstruct, an official proceeding under § 1512(c)(2)." *Id.*

---

[2] *See Reffitt*, ECF Nos. 75, 79 & 80.

Count Two in Mr. Cua's second superseding indictment includes no such detailed allegations like *Sandlin* and is substantively identical to the charge against Mr. Reffitt, alleging that Mr. Cua:

> Attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18, and aided and abetted others known and unknown to do the same.

ECF No. 90 at 2. Given the substantively identical nature of the section 1512(c)(2) charge against Mr. Reffitt and Mr. Cua, Mr. Cua respectfully requests that the Court adopt the reasoning of the Court in *Reffitt* and find that section 1512(c)(2) is vague as applied to Mr. Cua.

Respectfully submitted,

DATED:  December 29, 2021

/s/ William E. Zapf
Jonathan Jeffress (D.C. Bar No. 479074)
William E. Zapf (D.C. Bar No. 987213)
KaiserDillon PLLC
1099 14th Street NW
8th Floor West
Washington, DC 20005
T: (202) 640-2850
F: (202) 280-1034
jjeffress@kaiserdillon.com
wzapf@kaiserdillon.com

*Attorneys for Bruno Joseph Cua*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December 2021, I filed the foregoing with the Clerk of the United States District Court for the District of Columbia by using the CM/ECF system, which system I understand has provided electronic notice counsel of record.

Dated:  December 29, 2021                    */s/ William E. Zapf*

William E. Zapf