**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**BRUNO JOSEPH CUA** | **Criminal Action No. 21-00107 (RDM)** |

**UNOPPOSED RENEWED MOTION TO MODIFY CONDITIONS OF RELEASE**

Defendant Bruno Joseph Cua, by and through his attorneys, pursuant to Federal Rule of Criminal Procedure 46 and 18 U.S.C. § 3142(c)(3), respectfully renews his motion for an order modifying the terms and conditions of Mr. Cua's pretrial release to remove the requirement that he submit to location monitoring by Pretrial Services. Mr. Cua understands that Pretrial Services for the Northern District of Georgia has also requested removal of location monitoring. This request is explained in further detail below.

Undersigned counsel has spoken with Mr. Cua's supervising Pretrial Services officer, Officer Shannon Brewer, who has stated that her office recently transmitted a request for removal of location monitoring to D.C. Pretrial Services, in accordance with that jurisdiction's internal general practice of reviewing defendants for potential requests to remove location monitoring for defendants who have been in compliance for more than a year. *See* ECF No. 145 at 2 (pretrial compliance report confirming that D.C. Pretrial Services received the request and summarizing it). Assistant United States Attorney Kimberly Paschall has stated that the government will defer to Pretrial Services and will not oppose the motion.

In support of this motion, Mr. Cua states as follows:

1.      On March 10, 2021, the Court entered a Memorandum Opinion and Order granting Mr. Cua's motion for pretrial release, ordering that he be released on March 16, 2021, subject to conditions. *See* ECF No. 25 at 16. The Memorandum Opinion and Order attached an Order Setting Conditions of Release. *Id*. at Attachment A. Among other conditions, the Order Setting Conditions of Release placed Mr. Cua in the custody of his mother, Dr. Alise Cua, as third-party custodian and restricted him to home detention, except for employment and certain other activities approved in advance by the pretrial services office or supervising officer. *Id.* (conditions 6 and 7(p)(ii), Another one of the conditions in the order states: "The defendant must: . . . submit to location monitoring as directed by pretrial services office or supervising officer and comply with all of the program requirements and instructions provided." *Id.* (condition (7)(r)).

2.      On April 12, 2021, the Court granted in part and denied in part a motion by Mr. Cua to clarify his conditions of release with respect to employment outside the family property. *See* ECF No. 35. The Court denied as moot Mr. Cua's request to confirm that that he is permitted to leave his home's property for employment purposes, subject to his other conditions of release, noting that the existing order already permitted such employment. *Id.* at 1, 2. The Court granted Mr. Cua's request that his third-party custodian Dr. Cua not be required to remain with Mr. Cua during his work outside the property. *Id.* at 2.

3.      On June 2, 2021, the Court granted a motion by Mr. Cua to modify his conditions of release in three ways: (1) to permit him to travel to and within neighboring Cherokee County, Georgia; (2) to permit him to travel to and from the property owned by the Cua family in Jasper County, Georgia; and (3) to permit him to go to and be inside the outbuilding on his home's

property referred to as the "workshop" or "barn" without direct supervision of his third-party custodian. *See* ECF No. 46.

4.      On July 9, 2021, the Court granted a motion by Mr. Cua to modify his conditions of release in two ways: (1) to permit him to drive himself to and from work sites for employment that has been pre-approved by Pretrial Services without being accompanied by his third-party custodian; and (2) subject to advance approval by the Pretrial Services Office and his other conditions of release, permitting Mr. Cua's father, Joseph Cua, to serve as an alternate third-party custodian, provided that he completes, signs, and submits to the Court a declaration from himself in the form of Attachment B to the Court's March 10, 2021 Order on the Monday following any such period. *See* ECF No. 54.

5.      On August 23, 2021, the Court granted a motion by Mr. Cua to modify his conditions of release to travel within the geographic bounds of the Northern District of Georgia, subject to the other conditions of his release and with pre-approval from Pretrial Services. *See* Aug. 23, 2021 Minute Entry.

6.      On November 23, 2021, the Court granted in part and denied in part a motion by Mr. Cua to modify his conditions of release in two ways. The Court granted permission for Mr. Cua to travel to and obtain materials and supplies for his work without being accompanied by his third-party custodian. The Court denied a request that the Court remove the requirement that he submit to location monitoring. *See* Nov. 23, 2021 Minute Order. The government had opposed the removal of location monitoring at that time.

7.      On February 11, 2022, the Court granted a sealed consent motion by Mr. Cua to permit him to travel to a property of the family without the need to be accompanied by his third-

party custodian. *See* ECF No. 117 (sealed motion for leave to file document under seal attaching the motion to modify conditions of release).

8.      On February 14, 2022, Mr. Cua filed a sealed consent motion for permission for Mr. Cua to travel out of state for the funeral of a family member. *See* ECF No. 119 (sealed motion for leave to file document under seal attaching the motion to modify conditions of release). The Court granted the motion in a sealed minute order.

9.      On April 19, 2022, the Court entered a minute order granting a consent motion for permission to travel out of state to a family wedding. *See* ECF No. 144 (motion).

10.     Mr. Cua has now been on pretrial release for more than thirteen months (since March 16, 2021). Mr. Cua previously requested removal of location monitoring five months ago in November 2021, a motion that the government opposed and that the Court denied. Mr. Cua has been in perfect compliance with his conditions of release since his release. His track record of perfect compliance is now much longer than it was in November. Dr. Alise Cua and/or his father Joseph Cua have submitted a declaration every week as Mr. Cua's third-party custodians, certifying that Mr. Cua has complied with his conditions of release. Mr. Cua is continuing to work regularly off of his family's property, and each employer has submitted a declaration of Mr. Cua's compliance with his conditions of release during his employment with each of them.

11.     Pretrial Services in the Northern District of Georgia has now requested that the condition of location monitoring be lifted. *See* ECF No. 145 at 2. Given Pretrial's position, Mr. Cua respectfully renews his prior request to modify the Court's release order to remove the condition that he submit to location monitoring. Mr. Cua understands that his supervising Pretrial Services Officer sent a written request to D.C. Pretrial Services for removal of location monitoring, although Mr. Cua has not seen that written request. That request was not included in

the most recent Pretrial Services Status Report, *see* ECF No. 145, but counsel has confirmed with D.C. Pretrial Services that it received it and has the written request for the Court's review, if so desired.

12.     In addition to the request from Pretrial Services and this motion, the government has informed the defense that it will defer to Pretrial Services and will not oppose removal of location monitoring. The government has further informed the defense that it recently agreed to the removal of location monitoring for two defendants, Steven Cappuccio and Daniel Mehaffie, with charges that it considers to be similar to Mr. Cua's charges. *See United States v. McCaughey*, et al., No. 1:21-cr-00040-TNM, ECF Nos. 242, 245 & 270 (motions of Defendants and the government's response). Messrs. Cappuccio and Mehaffie are part of a nine-defendant case involving the chaotic scene and prolonged violent struggle against law enforcement in the tunnel at the lower west entrance to the Capitol. The Court granted the defendants' motions to remove location monitoring by minute order on April 22, 2022.

13.     Mr. Cappuccio has been charged with robbery under 18 U.S.C. § 2111, in connection with taking a baton from an officer by force (count 30); two counts of assaulting a federal officer under 18 U.S.C. § 111(a) and (b) (counts 28 and 29), including *use* of a baton in the assault[1]; obstruction of an official proceeding under 18 U.S.C. § 1512(c)(2) (count 34); civil disorder under 18 U.S.C. § 231(a)(3) (count 35); and two counts of disorderly and disruptive conduct and engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon under 18 U.S.C. § 1752, based on carrying a baton (counts 42 and 50); among other charges. *See id.*, ECF No. 179 (fifth superseding indictment).

---

[1] In contrast to section 111(a), under which Mr. Cua is charged, the more serious charge against Mr. Cappuccio under section 111(b) includes the added elements of either use of a deadly or dangerous weapon or infliction of bodily injury and a maximum sentence of 20 years in prison.

14.     Mr. Mehaffie has been charged with assaulting a federal officer under 18 U.S.C. §

111(a) (count 12); obstruction of an official proceeding under 18 U.S.C. § 1512(c)(2) (count 34);

and civil disorder under 18 U.S.C. § 231(a)(3) (count 35); among other charges. *See id.*

15.     According to a Department of Justice press release,[2] Mr. Cappuccio is shown on

video on the lower west terrace:

> Cappuccio joined in an effort to push past officers guarding the lower west
> terrace doors inside the tunnel and violently ripped off the mask of an officer
> pinned against the doors by other rioters. Cappuccio can be seen grabbing
> the officer's mask and yanking on it with what appears to be a significant
> amount of force…. Cappuccio is further seen with a baton as he pulled on
> the officer's mask. Footage of this event shows the officer crushed in
> between a doorway and riot shield, without his gas mask, while screaming
> and yelling for help with his mouth bloodied.[3]

16.     According to the same press release, Mehaffie was at the forefront of the crowd

fighting with officers at the lower west terrace entrance:

> Mehaffie can be seen walking up the exterior terrace stairs and into the
> tunnel as part of the first group of individuals to attempt to breach the
> Capitol through that entrance…. Mehaffie is seen at approximately 2:42
> p.m. standing outside the first set of double doors repeatedly using his fist
> to pound on the unbroken glass. Moments later, another rioter used a
> makeshift weapon to break the glass window out of the door that Mehaffie
> was pounding. Mehaffie was the first to walk through the first set of doors
> and open a second set of doors where U.S. Capitol Police (USCP) and
> Metropolitan Police Department (MPD) officers had formed a human
> barricade to protect the entrance from being breached. As Mehaffie held the
> door open, other rioters began attacking the USCP and MPD officers with
> their hands and makeshift weapons, including flag poles.

---

[2] Press Release, "Texas and Ohio Men Arrested for Assault on Law Enforcement During Jan. 6
Capitol Breach: Superseding Indictment Identifies Two Additional Defendants in Egregious,
Nine-Person Case Involving Assault on Police" (Aug. 18, 2021), *available at*
https://www.justice.gov/usao-dc/pr/texas-and-ohio-men-arrested-assault-law-enforcement-
during-jan-6-capitol-breach.
[3] Video of the chaotic scene in the tunnel to the lower west entrance is publicly available at
https://www.youtube.com/watch?v=bmtL27dqz6w. It appears that Mr. Cappuccio begins to tear
off the mask of the officer, later identified as Officer Daniel Hodges, starting at approximately
the 1:30 mark in the video. Officer Hodges can then be seen screaming for help beginning at
approximately 2:20.

17.     In addition, according to the same press release, Mr. Mehaffie apparently spent 26 minutes directing and encouraging the crowd in the violent struggle against the officers:

> At 2:51 p.m., Mehaffie exited the tunnel and climbed up on a raised platform at the tunnel entrance a minute later. As alleged, he stood above the crowd of rioters for approximately 26 minutes and helped coordinate the mob's actions by attempting to organize and direct individuals in and around the tunnel. Security footage captured him repeatedly using his arms to direct the mob and assisting members of the crowd as they passed items back and forth in the tunnel including riot shields stolen from law enforcement. Open-source video captured Mehaffie showing, "If you are going in, get on this side!" while pointing to the right side of the tunnel. He additionally directed rioters to "push, push!"

18.     Although Mr. Cua recognizes the seriousness of the allegations against himself, these allegations against Messrs. Cappuccio and Mehaffie stand in stark contrast, involving serious violence, coordination, and prolonged and persistent misconduct over a significant period of time. Moreover, in contrast to Mr. Cua, who was released more than thirteen months ago after spending approximately 40 days in jail, Messrs. Cappuccio and Mehaffie were released in mid-August 2021, approximately eight months ago, and just a few days after their arrests. *United States v. McCaughey*, et al., No. 1:21-cr-00040-TNM, ECF Nos. 116 & 117. Notably, neither Mehaffie nor Cappuccio were placed under third-party custodianship at the time of their release. *See id.*

19.     The Bail Reform Act requires that a defendant on pretrial release be "subject to the least restrictive further condition, or combination of conditions, that [the Court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community…." 18 U.S.C. § 3142(c)(1)(B). The Court "may at any time amend the [release] order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3).

20.     At this point in Mr. Cua's pretrial release, location monitoring is no longer necessary to assure his appearance at future court proceedings or the safety of the community. Pretrial Services in his district of supervision, including the officer who has supervised him during his entire release, has requested removal. The government does not disagree. The government's position with respect to Messrs. Cappuccio and Mehaffie further illustrate its position that location monitoring is not necessary in Mr. Cua's case, by comparison.

21.     To further assist the Court, the defense notes that, prior to this case, Mr. Cua had never been arrested or spent any time in jail. After his arrest, he spent approximately 40 days in pretrial detention, the majority of which were spent in solitary confinement. After spending about three weeks detained in Georgia, Mr. Cua was transferred to the Grady County Jail in Chickasha, Oklahoma while awaiting transfer to Washington D.C., where he continued to wait more than two weeks. During his time in Oklahoma, Mr. Cua was physically assaulted and contracted COVID-19. After the Court ordered him to be released to his mother's custody, Mr. Cua's parents drove through the night from Georgia to Oklahoma to pick him up shortly after midnight on March 16, turned around immediately, and drove him back home the same day. Put simply, this time in pretrial detention forever altered Mr. Cua.

22.     Upon release, Mr. Cua was subject to strict conditions under the supervision of Pretrial Services in the Northern District of Georgia, including (1) home detention; (2) that he submit to location monitoring; (3) that he be placed in the custody of a third-party custodian, his mother, Dr. Alise Cua; (4) that he surrender his passport and not obtain a passport; (5) that he stay out of Washington, DC, except for court, pretrial services business, or meetings with an attorney; (6) that his travel be restricted to Fulton County, Georgia; (7) that he not possess a firearm, destructive device, or other weapon; (8) that he not use alcohol or drugs; (9) that he

submit to drug testing if required by Pretrial Services; and (10) that he not use any social media. *See* ECF No. 25-1 at 2. He has strictly abided by all of these conditions.

23.     Since his release, this Court has modified those conditions several times at Mr. Cua's request to provide him greater freedom of movement, including a broader geographic area to move (with pre-approval from Pretrial Services) within the Northern District of Georgia and the ability to travel to and from work without being accompanied by his third-party custodian. These modifications have provided more opportunities for Mr. Cua to work, which he greatly appreciates. See attached letter from Mr. Cua. More recently, the Court has granted two requests for Mr. Cua to travel out of state for family events.

24.     Since he was released on March 16, 2021, Mr. Cua has been a model defendant on pretrial release. He has had no violations, nor any allegations of violations. He has had the same supervising Pretrial Services officer, Officer Shannon Brewer, during his entire release period. She reports that he has done very well. During his recent trip outside of Georgia with the Court's permission, he was not subject to location monitoring because the equipment did not reach his travel location. He returned to his home without incident. In its original release order in March 2021, the Court noted how highly Mr. Cua ranks the virtue of liberty and instructed him that "can do well to honor [that virtue] by fastidiously following the Court's orders." As Mr. Cua reviews in the attached letter, he took those words to heart and has abided by the Court's conditions to a T and has renewed his vow to continue to abide by the Court's conditions.

25.     To further address relevant factors for the Court to consider, Mr. Cua has a stable living situation and the strong support of his family. He resides with his parents, both of whom are approved third-party custodians, along with his two siblings. He and his parents submit a proposed schedule to his Officer Brewer, each week for pre-approval of the coming week's

travel outside the home. Officer Brewer reports to undersigned counsel that the family has been doing this consistently and accurately each week.

26.     In addition, the ankle monitor has become a burden to Mr. Cua, his family, and Pretrial Services. The Cuas have reported that the ankle monitor has malfunctioned numerous times during the past thirteen (13) months (at least a dozen), including in the middle of the night, giving "false alarms" that Mr. Cua is not at home. This has also required Mr. Cua to make several special trips to the Pretrial Services Office to have his device worked on or replaced—he recalls having his ankle monitor replaced five times. He and his parents also have been called several times, including in the middle of the night, reporting that Bruno is out without permission (which he has never been). Such false alarms and malfunctions are a substantial inconvenience and source of stress for the Cuas and Bruno and are a burden on them and the resources of Pretrial Services.[4] In addition, Mr. Cua is paying a portion of the cost of the monitoring system, albeit proportionate to his income, while Pretrial Services covers the remaining cost.

27.     If the Court were to grant the motion to remove the need for location monitoring, the remaining conditions of release are more than sufficient to reasonably assure Mr. Cua's appearance at future court proceedings and the safety of the community. Officer Brewer and her Pretrial Services Office agree and have requested removal of the ankle monitor, concluding that in their professional opinion, as the office supervising Mr. Cua on a daily basis, Mr. Cua can be adequately supervised with respect to his other conditions without location monitoring. This includes supervising him through phone calls (including video chats), email, text messages, and home visits, as determined in the discretion of Pretrial Services.

---

[4] Counsel's understanding is that Officer Brewer is willing to provide further details regarding the troubles with the monitor if the Court requests them.

28.     Location monitoring is primarily a tool to guard against flight risk and to help ensure compliance with other release conditions. In this case, the government has never seriously asserted that Mr. Cua is a flight risk and his track record of compliance to date demonstrates that he will comply with other release conditions.

29.     In terms of safety of the community, Mr. Cua previously disavowed any beliefs he previously expressed with regard to challenging the legitimacy of the 2020 election, *see* ECF No. 25 at 13-14, and has not engaged in any political rhetoric, whether violent or not. Several other conditions of release also better guard against the possibility that Mr. Cua will engage in criminal activity, including prohibitions against possessing firearms or other dangerous weapons, visiting Washington D.C., except for certain limited purposes, and refraining from the use of social media. *See United States v. Brock*, No. 21-140 (JDB), ECF No. 30, 2021 WL 3616902, at *3 (D.D.C. Aug. 16, 2021) (citing similar conditions and a record of compliance for another defendant alleged to have engaged in criminal activity at the Capitol on January 6, 2021, and who made violent threats online prior to that date).[5]

30.     In its denial of Mr. Cua's prior motion for removal of his ankle monitor, the Court recognized Mr. Cua's compliance with all of the conditions imposed by the Court and the absence of any evidence that he had engaged in any improper or illegal conduct since his arrest. Nov. 23, 2021 Minute Order. Nevertheless, the Court said it could not disregard Mr. Cua's conduct prior to his arrest, such as his carrying of a baton, allegations that he shoved a plain-

---

[5] Mr. Cua further incorporates here the arguments and evidence provided in his November 19, 2021 reply brief in support of his prior motion to remove location monitoring, including the sealed forensic report of Dr. Daniel Murrie that provides, among other analysis, his opinions regarding whether Mr. Cua is currently a threat or danger and the steps Mr. Cua has taken with respect to his mental health since his release, including ongoing counseling. *See* ECF No. 85. Mr. Cua is ready and willing to address or expand on those arguments if the Court prefers.

clothes police officer in an effort to enter the Senate Chamber, and social media messages following the 2020 Presidential election. *See id.* Mr. Cua recognizes the utmost seriousness of the charges and allegations against him and, while he continues to maintain his constitutional rights to be considered innocent until proven guilty and to avoid self-incrimination, his statements to the Court and subsequent long track record of compliance with the Court's conditions and abiding by the law support the conclusion that an ankle monitor is not necessary to reasonably ensure the safety of the community at this juncture.

31.     As stated above, Officer Shannon Brewer and the Pretrial Services Office in the Northern District of Georgia have requested removal of location monitoring.

32.     Also as reviewed above, Ms. Paschall has stated that the government defers to Pretrial Services as to whether continued location monitoring is necessary and will not oppose removal. Given this and the government's position in the cases against Messrs. Cappuccio and Mehaffie, it is apparent that the government agrees that location monitoring is not necessary to reasonably assure the safety of the community.

Wherefore, for the foregoing reasons, Mr. Cua respectfully requests that the Court enter the attached order modifying the Order Setting Conditions of Release, as stated above, subject to the other conditions of release and supervision of Pretrial Services.

Respectfully submitted,

DATED:   April 27, 2022

/s/ William E. Zapf
Jonathan Jeffress (D.C. Bar No. 479074)
William E. Zapf (D.C. Bar No. 987213)
KaiserDillon PLLC
1099 14th Street NW
8th Floor West
Washington, DC 20005
T: (202) 640-2850
F: (202) 280-1034
jjeffress@kaiserdillon.com
wzapf@kaiserdillon.com

*Attorneys for Bruno Joseph Cua*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of April, 2022, I filed the foregoing with the Clerk

of the United States District Court for the District of Columbia by using the CM/ECF system,

which system I understand has provided electronic notice counsel of record.


Dated:  April 27, 2022                                    */s/ William E. Zapf*
                                                         William E. Zapf