**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No.: 21-CR-00107-RDM** |
| **v.** | **Honorable Randolph D. Moss** |
| **BRUNO JOSEPH CUA,** | |
| **Defendant.** | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS COUNT ONE OF THE SECOND SUPERSEDING INDICTMENT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits that this Court should deny Defendant Bruno Cua's motion, Dkt. Entry 230, seeking dismissal of Count One of the Second Superseding Indictment.

Count One charges Cua with civil disorder, in violation of 18 U.S.C. § 231(a)(3). Cua argues that Count One of the Second Superseding Indictment does not contain facts essential to the offense charged. Dkt. Entry 230 at 4. He then argues that even if the Court finds that the indictment is sufficiently specific, that any "federally protected function" that the Government pled or could plead does not qualify under the statute, and that the statute exceeds Congress's Commerce Clause authority. Dkt. Entry 230 at 5, 10. Cua's contentions lack merit and should be denied.

**FACTUAL BACKGROUND**

*General Facts*

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress convened in the United States Capitol building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. As

early as 12:50 p.m., certain individuals in the crowd forced their way through, up, and over erected barricades. The crowd, having breached police officer lines, advanced to the exterior façade of the building. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol. At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to – and did – evacuate the chambers.

*Facts Specific to Defendant Cua*

Cua is charged in a twelve-count indictment for offenses committed at the U.S. Capitol Building on January 6, 2021. In short, Cua wielded a baton on the grounds of the U.S. Capitol, stormed past officers at the door of the Upper West Terrace, and took part in an aggressive confrontation with U.S. Capitol Police Officers, who stood as the last line of defense before the Senate chamber. Cua then rushed into the Senate gallery, leading a crowd of rioters behind him, and ultimately opening the doors to the Senate chamber to a flood of additional rioters. He ultimately made his way to the Senate dais, sitting where the Vice President of the United States had been minutes before. Cua had been advocating for violent protest weeks before January 6, 2021, posting on Parler and Instagram that this is an "open carry mission," rioters would "break down their doors and take our country back by force," and that everyone should "show up ready to fight." Dkt. Entry 12. After the events of January 6th, Cua posted that "[e]veryone who works in congress is a traitor to the people and deserves a public execution." Dkt. Entry 12.

**PROCEDURAL HISTORY**

Based on his actions, the grand jury returned a twelve-count Second Superseding Indictment on December 1, 2021, charging Cua with: Count One, Civil Disorder, in violation of

18 U.S.C. § 231(a)(3); Count Two, Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2; Count Three, Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)( 1); Count Four, Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(1) Section 1752(a)(1) and (b)(1)(A); Count Five, Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A); Count Six, Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A); Count Seven, Entering and Remaining on the Floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A); Count Eight, Entering and Remaining in the Gallery of Congress, in violation of 40 U.S.C. § 5104(e)(2)(B); Count Nine, Entering and Remaining in Certain Rooms in the Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(C); Count Ten, Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); Count Eleven, Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § Section 5104(e)(2)(F); and Count Twelve, Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Dkt. Entry 90.

Cua was arraigned on the Second Superseding Indictment on December 6, 2021. On December 5, 2022, Cua filed a Motion to Dismiss Count One of the of the Second Superseding Indictment. Dkt. Entry 230. A trial is scheduled to commence on February 13, 2023.

## LEGAL STANDARD

An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text

while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). An indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the Government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here.

Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). Criminal cases have no mechanism equivalent to the civil rule for summary judgment. *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) (motions for summary judgment are creatures of civil, not criminal trials); *Yakou*, 428 F.2d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-cr-40-BAH at *5, 2020 WL 6342940 (D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence). Accordingly, dismissal of a charge does not depend on forecasts of what the Government can prove. Instead, a criminal defendant may

move for dismissal based on a defect in the indictment, such as a failure to state an offense. *United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016). Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination.

Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *Bingert*, 21-cr-93 (RCL) (Dkt. Entry 67:5) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *McHugh*, 2022 WL 1302880 at *2 (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, No. 21-cr-454 (PLF), 2020 WL 823079 at *4 (D.D.C. Mar. 19, 2022) (quoting *United States v. Sunia*, 643 F.Supp. 2d 51, 60 (D.D.C. 2009)).

## ARGUMENT

The Defendant's motion to dismiss Count One of the Second Superseding Indictment, alleging a violation of 18 U.S.C. § 231(a)(3), lacks merit and should be denied, because the Second Superseding Indictment provides sufficient notice to Cua as to the charge against him, and because Congress's power under the Commerce Clause is not at issue.

Count One charges Defendant Cua with impeding and interfering with law enforcement during a civil disorder, in violation of 18 U.S.C. § 231(a)(3).

Count One states:

On or about January 6, 2021, within the District of Columbia, BRUNO JOSEPH CUA, committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer, that is, Officer G.L., an officer from the United States Capitol Police Department, lawfully engaged in the lawful performance of his/her official duties, incident to and during the commission of a civil disorder, which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

5

(Civil Disorder, in violation of Title 18, United States Code, Sections 231(a)(3))

Dkt. Entry 90.

## I.      The Second Superseding Indictment Provides Sufficient Notice.

First, Cua contends that Count One in the Second Superseding Indictment should be dismissed because it does not provide adequate specificity and information as to the charge against him. Cua premises this challenge on the Sixth Amendment's right "to be informed of the nature and the cause of the accusation" and Federal Rule of Criminal Procedure 7(c)'s requirement that an indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged."

Cua misunderstands the purpose of an indictment and the low bar it must clear to satisfy the Federal Rules of Criminal Procedure and the Constitution. As the D.C. Circuit explained in *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976), "[a]lthough an indictment must in order to fulfill constitutional requirements apprise the defendants of the essential elements of the offense with which they are charged, neither the Constitution, the Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice as to every means by which the prosecution hopes to prove that the crime was committed." *Id.* at 124. Indeed, "the validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). "While detailed allegations might well have been required under common-law pleading rules . . . they surely are not contemplated by Rule 7(c)(1), which provides that an indictment 'shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *Id.* at 110. As a mere notice pleading, an indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the

charge against which he must defend." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007); *Haldeman*, 559 F.2d at 123 ("The validity of alleging the elements of an offense in the language of the statute is, of course, well established."). Only in the rare case where "guilt depends so crucially upon . . . a specific identification of fact" not included in the statutory language will an indictment that restates the statute's language be insufficient. *Haldeman*, 559 F.2d at 125 (quoting *Russell v. United States*, 369 U.S. 749, 764 (1962)).

Applying these principles, judges in this District have upheld the sufficiency of indictments far less specific than Cua's. For example, in *United States v. Apodaca*, 275 F. Supp. 3d 123 (D.D.C. 2017), the defendants were charged with offenses under 18 U.S.C. § 924(c). The indictments provided only "general detail as to the places where the offenses were committed: namely, Mexico and the United States." *Id.* at 154. As to the "when" of the offenses, the indictments alleged that the offenses had occurred over a two- and nine-year period. *Id.* Finally, the indictments "d[id] not specify a particular weapon that was possessed," or "specify whether the firearms were 'used, carried or brandished'" under the statute. *Id.* Nonetheless, the indictments were sufficient.

Judges in this District have also upheld against specificity challenges to indictments that arose out of the January 6, 2021, riot at the U.S. Capitol and are identical to the operative indictment in this case. For example, in *United States v. Sargent*, Judge Hogan rejected a similar specificity challenge to an indictment charging Section 231 and other charges also faced by Defendants in this case. No. 21-CR-258, 2022 WL 1124817, at *3 (D.D.C. Apr. 14, 2022). In a careful and deliberate opinion, Judge Hogan concluded that every one of the charged counts was properly alleged because each stated the elements of the offense and, though the charging language closely mirrored the statute, no further factual allegations were required to provide notice or protect against double jeopardy concerns. *Id.* at *2–*10.

In *United States v. Williams*, Judge Berman Jackson similarly found that the language of an indictment charging a violation of 18 U.S.C. § 231(a)(3) that largely tracked the statute was sufficiently specific. No. 21-CR-618, 2022 WL 2237301, at *8 (D.D.C. June 22, 2022). She observed: "the first paragraph of the indictment comprising Count I sets forth all of the elements of section 231(a)(3) . . . It thereby enables Williams to prepare a defense and plead that an acquittal or conviction is a bar to future prosecutions." *Id.*

The Section 231(a)(3) charging language that passed muster in *Williams*, *see* No. 21-CR-618, Dkt. Entry 27 at 1-2 (Count One), is identical to Count One of the indictment here, *see* Dkt. Entry 90 at 2 (Count One), but Cua's indictment is indeed *more* specific, because the Government also identifies the particular law enforcement personnel relevant to the conduct charged.

As in *Sargent* and *Williams*, the indictment provides sufficient information to fairly inform Cua of those offenses. Cua knows the day on which the alleged crimes occurred: January 6, 2021, which is alleged in all counts. *See* Dkt. Entry 90. He knows that all charged conduct occurred in this District, from the indictment's allegation. *Id.* Multiple counts specifically refer to conduct on U.S. Capitol grounds, further narrowing the "where" of the charged crimes, and at a time when the Vice President was and would be temporarily visiting. Counts One and Two relate specifically to an existing civil disorder and to a law enforcement officer. Dkt. Entry 90. Counts Four, Five, and Six refer to the specific type of "deadly or dangerous weapon" that Defendants used: a baton. *Id.* The statutes charged are not so unusually vague that they require allegations beyond the elements of the offenses.

Cua complains that the indictment does not articulate *how* the Government intends to prove that a civil disorder existed, as Section 231 provides more than one avenue for doing so. Dkt. Entry 230 at 5. But Cua's "complaint seems to result . . . from a general misunderstanding of the purpose

of the indictment and, especially, from an inflated notion of what must be included therein." *Haldeman*, 559 F.2d at 124. As the D.C. Circuit concisely explained in rejecting an identical argument in *Verrusio*:

> Verrusio contends that Count Two of the indictment failed to allege an official act because it failed to say "how Mr. Verrusio was going to use his position" to help United Rentals . . . . The indictment certainly need not allege precisely how Verrusio contemplated [committing the crime]. Would he do it by himself or ask someone else to do it? Would that someone else be Colonel Mustard or Professor Plum? With a candlestick or a rope, in the library or the study? Answering those questions is not required at the indictment stage.

762 F.3d at 14-15. For that reason, Judge Hogan in *Sargent* rejected an argument just like Cua's, concluding that the indictment need not allege the specific facts detailing precisely how the Government believes the defendant violated the statute. *See* 2022 WL 1124817 at *3, *4, *7, and *10. Instead, as noted above, an allegation of fact beyond the statute's elements is required only if "guilt depends so crucially upon such a specific identification of fact." *Id.* at *10 (quoting *Russell*, 369 U.S. at 764). As Judge Hogan correctly concluded, that is not true with respect to the crimes charged against Cua in in Count One. Cua's specificity argument fails and the Court should deny his motion.

## II.      Congress's Power Under the Commerce Clause Is Not at Issue.

Cua's attack on the commerce predicate is misdirected and meritless because Congress's power under the Commerce Clause is not at issue in this case. In addition to its limited power to regulate foreign and interstate commerce under U.S. Const. Article I, Section 8, Clause 3, Congress has plenary power under U.S. Const. Article I, Section 8, Clause 17, to legislate regarding the District of Columbia. Congress expressly exercised its Clause 17 power in 18 U.S.C. 231(a)(3), which prohibits, *inter alia*, obstructing police officers performing their official duties during a civil

disorder which has "any effect whatsoever" on commerce "within the District of Columbia." *See* 18 U.S.C. § 232(C).

In his motion to dismiss, Cua does not address Congress's Clause 17 power, but only its power to regulate interstate commerce under Clause 3, a power that, unlike Clause 17, is bounded by the power of every state to regulate wholly intrastate commerce. Congress's power to regulate not only commerce but matters within the Government's police powers with respect to the District of Columbia is not constrained by the power of the states. Cua's Commerce Clause challenge to the § 231(a)(3) charge for conduct he committed wholly inside the District of Columbia is therefore wholly beside the point.

### A. Cua's Commerce Clause Challenge To The § 231(A)(3) Count Is Beside The Point: Congress Had Authority To Prohibit His Conduct Inside The District Of Columbia Pursuant To Article I, Section 8, Clause 17.

Cua contends that "Section 231(a)(3) exceeds Congress's Commerce Clause authority." Dkt. Entry 230 at 10. He relies principally on *United States v. Lopez*, 514 U.S. 549 (1995) and *United States v. Morrison*, 529 U.S. 598 (2000), which held, respectively, that Congress exceeded its authority under the Commerce Clause by enacting the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A), and the Violence Against Woman Act of 1994, § 40302, 108 Stat. 1941-42, 42 U.S.C. § 13981(b). *Lopez*, 514 U.S. at 568; *Morrison*, 529 U.S. at 617. Motion at 44-49.

This claim fails. Regardless of whether § 231(a)(3) exceeds Congress's power under the Commerce Clause—and it does not, *see infra* at 14-16—for cases such as Cua's involving criminal conduct committed wholly within the District of Columbia, that statute fits comfortably within Congress's power under Article I, Section 8, Clause 17. It states

> The Congress shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States….

U.S. Const. Art. I, § 8, Cl. 17.

Congress's power under Clause 17 "is plenary." *Palmore v. United States*, 411 U.S. 397 (1973). "Not only may statutes of Congress of otherwise nationwide application be applied to the District of Columbia, but Congress may also exercise all the police and regulatory powers which a state legislature or municipal government would have in legislating for state or local purposes." *Id*. "Congress 'may exercise within the District all legislative powers that the legislature of a state might exercise within the State … so long as it does not contravene any provision of the constitution of the United States.'" *Id*. (quoting *Capital Traction Co. v. Hof*, 174 U.S. 1, 5 (1899)). "Congress may legislate within the District for every proper purpose of government," and "[w]ithin the District of Columbia, there is no division of legislative powers such as exists between the federal and state governments." *Neild v. D.C.*, 110 F.2d 246, 249 (D.C. Cir. 1940) (citing *Kendall v. United States ex rel. Stokes*, 37 U.S. 524 (1838); *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427 1932); and *O'Donoghue v. United States*, 289 U.S. 516 (1933)). "[W]hen it legislates for the District, Congress … exercise[es] complete legislative control as contrasted with the limited power of a state legislature, on the one hand, and as contrasted with the limited sovereignty which Congress exercises within the boundaries of the states, on the other. *Neild* 110 F.2d at 250-51. *See also Hyde v. S. Ry. Co.*, 31 App. D.C. 466, 469 (D.C. Cir. 1908) ("The legislative power of Congress over the District of Columbia and the Territories [is] plenary, and [is] not depending upon the interstate-commerce clause").

By enacting § 231(a)(3), Congress relied on its Clause 17 power with respect to the District of Columbia. That statute prohibits "any act" that "obstruct[s], impede[s], or interfere[s] with any … law enforcement officer … engaged in [his]official duties incident to and during the commission of a civil disorder which *in any way or degree* obstructs, delays, or adversely affects

commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 231(a)(3)(emphasis added). "Commerce," as used in § 231(a)(3), "means commerce (A) between any State or the District of Columbia and any place outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) *wholly within the District of Columbia*." 18 U.S.C. 18 U.S.C.A. § 232(2) (emphasis added).

Here, Count One of the Third Superseding Indictment charges that Cua "obstructed and attempted to obstruct a law enforcement officer … incident to a civil disorder" that "adversely affected" "in any way or degree" "commerce," meaning, *inter alia*, commerce "wholly within the District of Columbia." Regardless of whether Congress had authority under the Commerce Clause to regulate such conduct in jurisdictions other than the District of Columbia, it did not and could not exceed its "plenary authority" to exercise "police power" within the District of Columbia unless that exercise violated some other provision of the Constitution. Cua fails to identify any Constitutional provision that § 231(a)(3)'s enactment would or does violate. *See generally Darnell v. Markwood*, 220 F.2d 374, 375–77 (D.C. Cir. 1954) (reversing dismissal of complaint under the Sherman Act, 15 U.S.C. §§ 1, 2, and 3, alleging that defendants "restrain[ed] interstate trade and commerce, and trade and commerce in the District" of Columbia; although defendants' activities wholly within the District of Columbia "do not come within the control of the Commerce Clause, or, therefore, within either Sections 1 or 2 of the Sherman Act, "Section 3 … is not dependent upon the Commerce Clause but rests upon the plenary legislative power of Congress within the District of Columbia").

In *Lopez* and *Morrison*, the Court stressed how Congress's Commerce Clause power was cabined by the retained authority of the states to regulate commerce wholly within their borders. "The Constitution requires a distinction between what is truly national and what is truly local."

12

*Morrison*, 529 U.S. at 617-28 (citing *Lopez*, 514 U.S., at 568); *Lopez*, 514 U.S. at U.S. at 559 ("the proper test [for the scope of Congress's power under the Commerce Clause] requires an analysis of whether the regulated activity 'substantially affects' interstate commerce"); *id*. at 564 ("if we were to accept the Government's arguments [that the Gun Free Schools Zone Act did not exceed Congress's powers under the Commerce Clause], we are hard pressed to posit any activity by an individual that Congress is without power to regulate"). Although it is without power to regulate purely intrastate commercial matters, Congress has plenary authority to regulate wholly local matters within the District of Columbia.

Additionally, Congress may not "regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Morrison*, 529 U.S. at 617. "The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." *Id*. at 616. By contrast "the power of Congress under Clause 17 permits it to legislate for the District in a manner with respect to subjects that would exceed its powers, or at least would be very unusual, in the context of national legislation enacted under other powers delegated to it under Art. I, § 8." *Palmore*, 411 U.S. at 397-98.

Because Clause 17, rather than Clause 3, provided Congress with plenary authority to prohibit conduct that had any effect whatsoever on commerce within the District of Columbia, all of Cua's challenges to the commerce element of § 213(a)(3) are beside the point, because all are grounded upon limitations on Congress's power under Clause 3. *See* Dkt. Entry 47 at 45 ("Section 231(a)(3) does not substantially affect interstate commerce"); *id*. at 46 ("Section 231(a)(3) does not regulate economic activity"); *id*. at 47 ("The jurisdictional element of § 231(a)(3) does not limit its reach to activities that substantially affect interstate commerce"); *id*. at 49 ("Congress did

not find that § 231(a)(3)'s activities substantially affect interstate commerce"); *id*. at 50 ("The relationship between § 231(a)(3)'s activities and any effect on interstate commerce is too attenuated").

Indeed, even for criminal statues with national application that do not single out commerce within the District for special protection, as § 232(2)(C) does with respect to § 231(a)(3), Commerce Clause challenges to prosecutions for crimes occurring wholly within the District must fail. *See United States v. Mahdi*, 598 F.3d 883, 896 (D.C. Cir. 2010) (rejecting claim that VICAR, 18 U.S.C. § 1959, "is facially unconstitutional as it violates the Commerce Clause"; "[I]t is impossible to see how a statute regulating conduct within the District of Columbia could exceed congressional authority under the Commerce Clause"). *See id*. ("Even if there were some doubt about § 1959's constitutionality outside the District of Columbia, 'we need not find the language of [§ 1959] constitutional in all its possible applications in order to uphold its facial constitutionality.'") (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 104 (1971)); *accord United States v. Carson*, 455 F.3d 336, 368 (D.C. Cir. 2006) ("Within the District, Congress did not need to rely on its Commerce Clause authority."). All the more reason why this Court should reject Cua's challenge to the commerce predicate in the § 231(a)(3) count, where Congress expressly targeted domestic disorders that affected commerce within the District.

**B.  Cua's Commerce Clause Challenge To The § 231(a)(3) Is Also Meritless In Its Own Right.**

Although this Court need not reach the issue, the district courts that have addressed claims like Cua's, based on *Lopez* and *Morrison*, have held that § 231(a)(3) does *not* exceed Congress's Commerce Clause authority, even when applied to conduct outside the District of Columbia. See *United States v. Phomma*, 2021 WL 4199961, at *2-3 (D. Or. Sept. 15, 2021) (notwithstanding *Lopez* and *Morrison*, "§ 231(a)(3) is within Congress's Commerce Clause authority because the

statute includes an express jurisdictional element, requiring that the defendant's obstruction or interference with a law enforcement officer or firefighter must occur 'during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce.'"); *accord, United States v. Howard*, 2021 WL 3856290, at *11 (E.D. Wis. Aug. 30, 2021); *United States v. Wood*, 2021 WL 3048448, at *4–6 (D. Del. July 20, 2021); *United States v. Pugh*, 1:20-cr-00073- TFM-B, Dkt. Entry 95 at 7-11 (S.D. Ala., May 13, 2021); *see generally United States v. Huff*, 630 F. App'x 471, 484-85 (6th Cir. 2015) (unpublished) (rejecting Commerce Clause challenge to a charge of transporting a firearm in furtherance of a civil disorder, in violation of 18 U.S.C. § 231(a)(2)).

In both *Lopez* and *Morrison*, the challenged statutes contained no "jurisdictional element" that required the Government to prove that the offense conduct affected interstate commerce. *Lopez*, 514 U.S. at 561-62 (Gun Free Schools Zone Act "contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce," in contrast to former 18 U.S.C. § 1202(a), "which made it a crime for a felon to 'receiv[e], posses[s], or transpor[t] in commerce or affecting commerce ... any firearm"); *Morrison*, 529 U.S. at 613 (Violence Against Women Act, "[l]ike the Gun–Free School Zones Act at issue in *Lopez*, … contains no jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce"; "Congress elected to cast § 13981's remedy over a wider, and more purely intrastate, body of violent crime").

Unlike those statutes, § 231(a)(3) has an "explicit jurisdictional element" that requires the Government (when relying on the Commerce Clause alternative) to prove that the offense conduct interfered with interstate commerce. *Wood*, 2021 WL 3048448, at *4-6 (rejecting defense claim, based on *Morrison* and *Lopez*, that "§ 231(a)(3) unconstitutionally exceeds Congress's authority

15

and intrudes into the States' primary role in general law enforcement because it broadly applies to purely local conduct and requires only an attenuated connection to interstate commerce"; "courts have held that 'despite *Lopez* and *Morrison*, the Government need only show a minimal effect on interstate commerce when the statute contains an explicit jurisdictional element'") (quoting *Pugh*, 1:20-cr-00073-TFM-B, Dkt. Entry 95 at *9 and citing *United States v. Kukafka*, 478 F.3d 531 (3d Cir. 2007) (upholding "Deadbeat Parents Act" where the statute contains an explicit jurisdictional element limiting its reach to only interstate activity).

For these reasons, this Court should reject Cua's challenge to the commerce predicate in § 231(a)(3).

### III. Count One Validly Alleges an Adverse Effect on a Federally Protected Function.

Cua also argues that Count One fails to adequately plead a federally protected function. Dkt. Entry 230 at 5. That argument is flawed. As relevant here, Section 232 defines the term to mean "any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof." 18 U.S.C. § 232(3). Here, evidence at trial could establish the federally protected function alternative to establishing a federal basis for prosecution through the United States Secret Service's protection of the Vice President and his family, *see United States v. Nordean*, 579 F. Supp. 3d 28, 55-56 (D.D.C. 2021), or the United States Capitol Police's obligation to protect the United States Capitol, *see* 2 U.S.C. § 1961. Therefore, Cua's argument fails.

**CONCLUSION**

For the foregoing reasons, the Government respectfully submits that Defendant Cua's motion to dismiss Count One of the Second Superseding Indictment should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Carolina Nevin*
        CAROLINA NEVIN
        Assistant United States Attorney
        NY Bar No. 5226121
        601 D Street, NW
        Washington, DC 20530
        (202) 803-1612
        carolina.nevin@usdoj.gov

        KAITLIN KLAMANN
        Assistant United States Attorney
        IL Bar No. 6316768
        601 D Street, NW
        Washington, DC 20530
        (202) 252-6778
        kaitlin.klamann@usdoj.gov

17