**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No.: 21-CR-00107-RDM** |
| **v.** | |
| **BRUNO JOSEPH CUA,** | **Honorable Randolph D. Moss** |
| **Defendant.** | |

**GOVERNMENT'S MOTION TO EXCLUDE**
**THE TESTIMONY OF DR. DANIEL MURRIE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its Motion to Exclude the Testimony of Dr. Daniel Murrie. Defendant should be barred from presenting the proposed expert testimony because: (1) defendant's expert notice is deficient; (2) defendant's expert is not qualified to opine on defendant's diminished capacity; and (3) the proposed testimony is inadmissible pursuant to Federal Rules of Evidence 704 and 403.

**PROCEDURAL BACKGROUND**

On December 1, 2021, the grand jury returned a Second Superseding Indictment charging defendant in 12 counts, including: civil disorder, in violation of 18 U.S.C. § 231(a)(3) (Count One); obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count Two); assaulting, resisting or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1)) (Count Three); entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A) (Count Four); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A) (Count Five); engaging in physical violence in a restricted building or grounds, in violation of Title 18 U.S.C. § 1752(a)(4) and (b)(1)(A) (Count Six); entering and

remaining on the floor of Congress, in violation of 40 U.S.C. §5104(e)(2)(A) (Count Seven); entering and remaining in the gallery of Congress, in violation of 40 U.S.C. § 5104(e)(2)(B) (Count Eight); entering and remaining in certain rooms in the Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(C) (Count Nine); disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Ten); act of physical violence in the Capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Eleven); and parading, demonstrating or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). Dkt. Entry 90.

The trial in this case is scheduled to begin on February 13, 2023. On December 5, 2022, defendant filed a notice of disclosure of expert testimony pursuant to Federal Rule of Criminal Procedure 12.2(b)(1) and 16(b)(1)(C). Dkt. Entry 229. Specifically, defendant seeks to have Dr. Daniel Murrie testify regarding "developmental immaturity" and "his forensic evaluation of Mr. Cua with respect to the events of January 6, 2021, and his resulting conclusions about Mr. Cua's mental state that day and during the surrounding time period." *Id.* at 2.  Dr. Murrie's primary conclusions are that "the two factors that are most relevant to Mr. Cua's behavior [on January 6, 2021] are his *developmental immaturity* and the social forces of *crowd dynamics.*"  Dkt. Entry 85, Ex. 1 (sealed) at 18 (emphasis in original).

## APPLICABLE LAW

The presentation of a psychological expert is limited by the Federal Rules of Evidence and the Insanity Defense Reform Act (IDRA), 18 U.S.C. § 17(a). Federal Rule of Evidence 702 states that an expert witness may testify only if the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. But "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact

alone." Fed. R. Evid. 704(b). The IDRA further limits the use of evidence of a mental disease or defect to times when a defendant presents an affirmative defense of insanity. *See* 18 U.S.C. § 17(a). A narrow exception to the IDRA's general rule against mental health evidence exists when, "the evidence is admitted not as an affirmative defense to excuse the defendant from responsibility for his acts, but to negate specific intent when that is an element of the charged act itself." *United States v. Childress*, 58 F.3d 693, 728 (D.C. Cir. 1995).

In *Childress*, the D.C. Circuit stated that even when mental health evidence is admissible to negate specific intent, the expert's testimony must be limited to "[the expert's] diagnoses, the facts upon which those diagnoses are based, and the characteristics of the mental diseases or defect the expert believes the defendant possessed during the relevant time period, staying clear of directly or indirectly opining on the [ultimate] issue of specific intent." *Id.* at 728. Appropriately, courts have closely scrutinized psychiatric evidence, as "the use of psychiatric evidence to negate *mens rea* may easily slide into wider usage that opens up the jury to theories of defense more akin to justification." *United States v. Pohlot*, 827 F.2d 889, 905 (3d Cir. 1987) (exclusion of evidence showing personality disorder). *See also United States v. Davis*, 863 F.3d 894, 908 (D.C. Cir. 2017) (exclusion of evidence showing ADHD); *United States v. Lilley*, 2017 WL 7048806, at *5 (6th Cir. July 26, 2017) (same for dyslexia, depression, and anxiety); *United States v. Andrews*, 811 F. Supp. 2d 1158, 1172 (E.D. Penn. 2011) (same bipolar disorder).

Federal Rule of Criminal Procedure 12.2 governs requests to introduce mental health evidence at trial. First, "[i]f a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on … the issue of guilt," he must notify the government. Fed. R. Crim. P. 12.2(b). After Rule 12.2 notice, "the defendant must, at the government's request, give to the government a written summary of any testimony that

3

the defendant intends to use … at trial. This summary must describe the witness's opinions, the bases and reasons for those opinions and the witness's qualifications". Fed. R. Crim. P. 16(b)(1)(C). Where a party fails to comply with Rule 16's obligations, a trial court is within its discretion to exclude the proffered testimony. *See* Fed. R. Crim. P. 16(d) (noting that if a party fails to comply with Rule 16's disclosure requirements, the court may "prohibit that party from introducing the undisclosed evidence.") After a defendant has provided notice of his intention to present mental health evidence, the district court may, at the government's request, order the defendant to submit to a mental health examination by a government expert.  *See* Fed. R. Crim. P. 12.2(c)(1)(B).  If the defendant introduces expert evidence at trial, the government's mental health expert may provide rebuttal testimony, including about statements made by the defendant during his examination.  *See* Fed. R. Crim. P. 12.2(c)(4)(A).

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony at trial. Rule 702 provides that an appropriately qualified witness may testify in the form of an opinion if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 further requires that the testimony be: (1) based on sufficient facts or data; (2) the product of reliable principles and methods; and (3) that the proposed expert reliably applied the principles and methods to the facts of the case. *Id. See also Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1995). The party proposing the expert testimony bears the burden of showing that the testimony satisfies Rule 702, and is therefore admissible. *See Meister v. Med. Eng'g Corp.*, 267 F.3d 1123, 1127 (D.C. Cir. 2001).

When determining the admissibility of expert testimony, the Court must initially determine whether the expert is qualified to offer an opinion on the pertinent issues of the case. *See Ralston*

*v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). A qualified expert possesses the necessary knowledge, skill, experience, training, or education relevant to the facts at issue. *Id.* The Court, serving as the "gatekeeper," must then conduct a two-pronged inquiry as to the reliability and relevance of the proffered testimony. *See Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).

**ARGUMENT**

The Court should exclude defendant's proposed expert testimony for at least three reasons: first, defendant's expert notice is deficient and defendant should therefore be precluded from presenting this testimony at trial. Second, defendant's proposed expert is not qualified to offer an opinion on defendant's diminished capacity; third, the testimony is inadmissible pursuant to Federal Rules of Evidence 704 and 403.

**I.      Defendant's Notice of Expert Testimony is Deficient.**

The Court should preclude defendant's proposed expert testimony because defendant failed to comply with the notice requirements under Federal Rule of Criminal Procedure 16(b)(1)(C). As set out above, defendant states that Dr. Murrie will "testify about his forensic evaluation of Mr. Cua with respect to the events of January 6, 2021, and his resulting conclusions about Mr. Cua's mental state that day and during the surrounding time period. Such testimony bears on Mr. Cua's guilt, including his intent to commit the offenses with which he has been charged." Dkt. Entry 229 at 3. However, nowhere in Dr. Murrie's report does he state what his conclusions are about defendant's mental state on January 6, 2021. Instead, Dr. Murrie merely alludes to defendant's age at the time of the offenses and the potential for individuals similarly situated to defendant to be impulsive, prone to ignore future consequences, and to be susceptible to crowd dynamics.  These generalized and conclusory circumstances seemingly would apply to every member of the crowd

5

on January 6, 2021 who was between 18 and 24 years old.[1]  If, as defendant represents in his

disclosure, Dr. Murrie intends to opine on defendant's mental state on January 6, 2021, then that

opinion has not been disclosed to the government.

Additionally, in his disclosure, defendant states that Dr. Murrie will testify according to a

prior report filed on the docket in this case. Dkt. Entry 229 at 3. Defendant goes on to state:

> [i]n addition to the subject matter addressed in Dr. Murrie's prior report, Dr. Murrie
> may testify regarding his further observations and conclusions based on further
> forensic interviews and his evaluation of Mr. Cua, collateral interviews of Mr.
> Cua's family and others, and review of additional evidence in this case, since his
> report was completed. Such additional evidence may include, but is not limited to,
> videos and photos of the events on January 6, 2021, and Mr. Cua's posts and
> messages on social media…

*Id.* at 3-4. The government has not been given a written summary of these additional topics of

testimony by defendant's expert, despite its request for such materials in its discovery letter sent

to defendant on May 4, 2021. Under these circumstances, the Court should preclude defendant

from presenting this additional undisclosed evidence at trial. *See* Fed. R. Crim. P. 16(d).

## II.     Defendant's Proposed Expert is Not Qualified to Opine on Defendant's Diminished Capacity.

Setting aside that Dr. Murrie's report does not actually include an opinion on defendant's

ability to form the requisite *mens rea* in this case, Dr. Murrie is not qualified to offer such an

opinion. While it is evident from Dr. Murrie's *curriculum vitae* that he is an accomplished

psychologist with significant experience in areas such as violence risk assessment, insanity

evaluations, and competency to stand trial, he has little experience evaluating an individual's

mental state at the time of offenses outside the context of an insanity defense. For example, none

of Dr. Murrie's formal consultations relates to diminished capacity, nor do any of his lectures and

---

[1] The government is aware of at least 68 defendants charged for their conduct at the United
States Capitol who were between the ages of 18 and 24 on January 6, 2021.

trainings. Notably, it appears that Dr. Murrie has never testified as to a defendant's mental state at the time of an offense.[2]

### III.     The Proposed Expert Testimony is Inadmissible Under Fed. R. Evid. 704 and 403

#### a.   Defendant's Expert Will Opine on an Ultimate Issue in the Case.

Defendant's proposed expert testimony should be precluded pursuant to Federal Rule of Evidence 704 because, according to defendant's notice, the expert will opine on defendant's mental state at the time he committed the charged crimes, a question solely for the jury.

As set out above, defendant's expert notice is deficient because it fails to disclose Dr. Murrie's conclusions regarding defendant's mental state on January 6, 2021. However, defendant's filing does represent that Dr. Murrie will "testify about his forensic evaluation of Mr. Cua with respect to the events of January 6, 2021, *and his resulting conclusions about Mr. Cua's mental state that day* and during the surrounding time period. *Such testimony bears on Mr. Cua's guilt*, *including his intent to commit the offenses with which he has been charged*." Dkt. Entry 229 at 3 (emphasis added). Thus, defendant proposes to have Dr. Murrie opine as to whether defendant did or did not have a mental state that constitutes an element of the crimes with which he is charged. In this way, the proposed testimony runs afoul of Federal Rule of Evidence 704(b) which states, "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Crim. P. 704(b). *See also United States v. Watson*, 171 F.3d 695, 703 (D.C. Cir. 1999) ("what is proscribed is questioning that produces responses

---

[2] To the extent Dr. Murrie has testified on such subjects within the previous 4 years and that testimony is not included in his *curriculum vitae*, defendant's expert notice is also deficient on this basis. *See* Fed. R. Crim. P. 16(b)(1)(C)(iii) ("The disclosure for each expert witness must contain:… a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.")

suggesting some special knowledge of the defendant's mental processes"); *United States v. Smart*, 98 F.3d 1379, 1388 (D.C. Cir. 1996) ("It is now well-established that Rule 704(b) applies to all cases in which an expert testifies as to a mental state or condition constituting an element of the crime charged or defense thereto."); *United States v. Ricketts*, 146 F.3d 492, 498 (7th Cir. 1998) ("Diminished capacity, applying as it does only to specific intent crimes, is an extremely limited defense. Intent to commit a crime is almost always a question of fact for the jury to decide based on the life experiences and common sense of its members.") *United States v. Gold*, 661 F. Supp. 1127, 1132 (D.D.C. 1987) ("Defendant shall be allowed to introduce testimony and evidence otherwise admissible on the factual issue of defendant's mental state or condition during the relevant time, but defendant shall not be allowed to introduce testimony or evidence that proposes an opinion or inference as to whether defendant did or did not have the mental state or condition necessary to constitute an element of the crime.").

Accordingly, defendant should be precluded from offering evidence pursuant to Rule 12.2(b) to negate the *mens rea* element of the offenses with which he is charged.

### b. The Expert Testimony's Probative Value is Substantially Outweighed by the Danger of Misleading the Jury.

Defendant's proposed expert testimony should also be barred pursuant to Federal Rule of Evidence 403. Specifically, the proposed testimony is likely to confuse and mislead the jury as to an excuse or justification defense, which is unavailable to defendant under the IDRA.

At the outset, courts have noted that psychiatric testimony like the testimony noticed by defendant should be closely scrutinized and is rarely useful to the trier of fact. "Most medical experts, including psychiatrists, are rarely able to make meaningful contributions that can properly guide jurors [in assessing a defendant's diminished capacity]. . . Because testimony of this kind has the potential for significant confusion, judges should vigorously police attempts

to introduce it during trials." Here, Dr. Murrie's proposed testimony cannot withstand the necessary scrutiny.

None of Dr. Murrie's findings, as discussed above, indicates a mental disease or defect that could have rendered defendant incapable of forming the requisite criminal intent in this case. Instead, a close review of Dr. Murrie's report and findings makes clear that his testimony is aimed at explaining or justifying defendant's actions on January 6, 2021, not at opining on defendant's mental capacity to form the requisite intent. This becomes clear when one compares the proper subject of diminished capacity expert testimony according to the D.C. Circuit in *Childress* with the question Dr. Murrie states he was asked to opine upon. The D.C. Circuit held that an expert's testimony on diminished capacity should be limited to "[the expert's] diagnoses, the facts upon which those diagnoses are based, and the characteristics of the mental diseases or defect the expert believes defendant possessed during the relevant time period," *Childress*, at 728. By contrast, Dr. Murrie's report notes that he is offering his opinion regarding "to what extent have psychological, emotional, or other factors contributed to the events underlying Bruno Cua's arrest?"[3] This is not the proper question on which to opine for a diminished capacity defense but instead relates to an excuse or justification defense, which is not available to defendant in this case.

Further review of Dr. Murrie's report confirms that his testimony is actually aimed at providing the jury with an excuse or justification defense. For example, Dr. Murrie specifically states that, "developmental immaturity is one of the features that *helps explain* the poor risk-versus-reward calculus underlying Mr. Cua's (and many adolescent's) impulsive and provocative

---

[3] Dr. Murrie also opines on the question: "To what extent, if any, does Bruno Cua pose a risk of violence or criminal recidivism, and what interventions might mitigate any such risk?" Dkt. Entry 85, Ex. 1 at 20. Testimony regarding defendant's risk of recidivism is wholly unrelated to any fact at issue in a trial and should be barred under Rules 403 and 401.

social media posts" and "developmental immaturity also *helps explain* Mr. Cua's quick transition from attending a political rally with parents to impulsively – and with little appreciation of consequences – joining a crowd that illegally entered the Capitol." Dkt. Entry 85, Exhibit 1 at 19.

In this way, the proposed expert testimony "is precisely the type of 'justification or excuse' evidence that is not permitted because of the danger that it will mislead the jury." *United States v. Davis*, 78 F. Supp. 3d 17, 21 (D.D.C. 2015). *See also United States v. Davis*, 863 F.3d 894, 907-908 (D.C. Cir. 2017) (affirming district court's order striking expert testimony regarding defendant's ADHD on the basis that the evidence would "open up the jury to theories of defense more akin to justification"). For these reasons, defendant's proposed expert testimony should be excluded under Federal Rule of Evidence 403.

**CONCLUSION**

For each of these reasons, the Court should preclude defendant from introducing expert testimony regarding a diminished capacity defense at trial.

Dated: December 19, 2022                    Respectfully submitted,


                                            MATTHEW M. GRAVES
                                            United States Attorney
                                            D.C. Bar No. 481052

                                    By:     /s/ Kaitlin Klamann
                                            KAITLIN KLAMANN
                                            Assistant United States Attorney
                                            601 D Street NW
                                            Washington, D.C. 20530
                                            IL Bar No. 6316768
                                            (202) 252-6778
                                            Kaitlin.klamann@usdoj.gov

                                            CAROLINA NEVIN
                                            Assistant United States Attorney
                                            601 D Street NW
                                            Washington, D.C. 20530
                                            NY Bar No. 5226121
                                            (202) 803-1612
                                            Carolina.Nevin@usdoj.gov