UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**BRUNO JOSEPH CUA** | Criminal Action No. 21-00107 (RDM)<br><br>Honorable Randolph D. Moss<br><br>Trial: February 13, 2023 |

**BRUNO CUA'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS FOUR, FIVE, AND SIX OF THE SECOND SUPERSEDING INDICTMENT**

Defendant Bruno Cua, through his counsel, files this reply brief in support of his motion to dismiss Counts Four, Five, and Six of the Second Superseding Indictment ("SSI").

**I.      Section 1752 requires the government to prove that the restricted area was restricted by the Secret Service.**

In interpreting a statute, the Court must "construe the language so as to give effect to the intent of Congress." *United States v. Am. Trucking Ass'n, Inc.*, 310 U.S. 534, 542 (1940). Of course, the first step is "to determine whether the language at issue has a plain and unambiguous meaning," but the Court must do so "with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Id.* at 341. It is only where "the statutory scheme is coherent and consistent" that the inquiry is ended with the text. *Id.* at 340 (internal quotation marks omitted).

The government argues that, because there is nothing in the express language of the statute requiring the Secret Service to be the agency restricting the building or grounds involved in a violation of section 1752, the statute is unambiguous, and the "judicial inquiry is complete." ECF No. 237 ("Opp.") at 5 (quoting *Babb v. Willkie*, 140 S.Ct. 1168, 1177 (2020)). The

government's approach, however, fails to consider "the particular dispute in this case," which is who or what may restrict the area at issue in section 1752 in the absence of an explicit designation in the statute of a particular person or persons as having the power to do so. The ambiguity requiring further analysis arises specifically *because* there is no express language as so who does the restricting. The statute uses passive language to state that the area must be "posted, cordoned off, or otherwise restricted," but does not specify who may or may not do the posting, cordoning off, or otherwise restricting. Thus, the ambiguity is created by, and not resolved by, Congress's failure to explicitly designate the person or persons who must restrict the area to create criminal liability.

Moreover, it is not simply the "language itself" that the Court must consider in its first analysis, as the government argues, but also "the specific context in which the language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341. As discussed in depth in Mr. Cua's motion, both the specific context here and the broader context of the statute is the protection of Secret Service protectees. If that is considered, as it must be, there is at least a continuing ambiguity in the text standing alone as to who or what must do the restricting.

The government's own statements show the continuing ambiguity if only the text is considered. Instead of the Secret Service, the government argues that 1752 has no requirement "that an area be restricted by any particular *law enforcement agency*." Opp. at 6 (emphasis added). The government thus appears to propose that the Court insert "law enforcement agency," rather than the Secret Service, as Mr. Cua proposes. But if the statutory text does not include a limitation as to the entity doing the restricting, the government's view is just as inconsistent with the text as the defense's proposed interpretation. After all, if the statutory text does not limit the statute to areas restricted by the Secret Service, it is no more limited to law enforcement agencies—federal, state, or local. With no limit as to who or what does the restricting, the area in

question could be restricted by anyone. All it would need to be is "posted, cordoned off, or otherwise restricted" by *some* person. For example, a private landlord might restrict access to an area even if the Secret Service does not want the area to be restricted.[1] Therein, lies the problem. The government's proposed interpretation is not "coherent" and, thus, does not solve the ambiguity. *Robinson*, 519 U.S. at 340.

The government's proposed interpretation is either arbitrary or limitless and is less supported by the text of the statute than the defense's proposed interpretation (which can at least rely on the current language of the statute, including that "restricted building or grounds" includes a building or grounds "where the President or other persons protected by the *Secret Service* is or will be temporarily visiting," the definition at issue in this case. The limitless scope proposed by the government is an unreasonable result and does not comport with the original policy reasons for enacting the statute in the first place. *See United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1352 (D.C. Cir. 2002) (stating that when the plain meaning of the statute produces an unreasonable result which is "plainly at variance with the policy of the legislation as a whole [the Supreme Court] has followed that purpose, rather than the literal words [of the statute]").

As a back-up, the government argues that the legislative history of section 1752 supports its reading because, in 2006, Congress struck what was then subsection (d) of the statute, which had authorized the Secretary of the Treasury to promulgate regulations regarding the designation of restricted buildings and grounds. Opp. at 6 (citing Pub. L. 109-177 (Mar. 9, 2006)). *See* also 18 U.S.C. § 1752(d). The government insinuates that this move by Congress was a purposeful broadening of the statute to encompass not only areas restricted by the Secret Service, as

---

[1] This could be, for example, if the protectee does not want the area restricted from the public and the Secret Service deems such an arrangement to be safe for the protectee.

originally enacted, but by any government agency. The government reads too much into the 2006 revisions. First, the assignment of regulatory powers to the Treasury Department in the original statute was only one indicator that the statute should be limited to areas restricted by the Secret Service. The entire statutory scheme and legislative history supports that conclusion and still does. Second, one would expect that, if Congress wished to expand the statute in such a dramatic way, it would have done so explicitly, or at least in a less subtle way, especially given the relevance of Secret Service protectees. Instead, there is no evidence that this expansion was Congress's intention in either the text or the legislative history.

Moreover, the government fails to highlight that the main purpose of the 2006 amendments was to "expand[] 18 U.S.C. § "to criminalize security breaches at [National Special Security Events ] that occur when the Secret Service protectee is not in attendance." *See* H.R. Conf. Rep. 109-333, at 110 (Dec. 8, 2005).[2] Further undermining the government's reading of the legislative history as creating a massive expansion of the statute, the House Conference Report for the 2006 statute describes section 1752 as "authoriz[ing] *the Secret Service to charge* individuals who breach established security perimeters or engage in other disruptive or potentially dangerous conduct at National Special Security Events…." *Id.* (emphasis added). Indeed, these revisions were made as part of the "Secret Service Authorization and Technical Modification Act of 2005." *See* Pub. L. 177-199, § 601. Thus, this change only reinforces the fact that the entity that must "restrict" the building or grounds in section 1752 is the U.S. Secret Service.

As to the 2012 amendment, the House Judiciary Committee Report explained that, with the prior statute, "there is no Federal law that expressly prohibits unlawful entry to the White

---

[2] "Because the conference report represents the final statement of terms agreed to by both houses, next to the statute itself it is the most persuasive of congressional intent." *Demby v. Schweiker*, 671 F.2d 507, 510 (D.C. Cir. 1981).

House and its grounds or the Vice President's residence and its grounds." H.R. Rept. 112-9 , at 2 (Feb. 11, 2011). The problem with the existing law at that time, the Report explains, was that "[t]he *Secret Service* must therefore rely upon a provision in the District of Columbia Code." *Id.* (emphasis added). Thus, again, the legislative history, if anything, reinforces the conclusion that the restricted areas under section 1752 are made by the Secret Service.

II. **If the Court agrees with the government that the area at issue need not be restricted by the Secret Service, section 1752 is unconstitutionally vague as to Mr. Cua.**

The government attempts to defend the vagueness of its proposed construction by pointing to metal bike racks, plastic snow fencing, signs, and a row of USCP officers that allegedly put Mr. Cua "on notice" that the area was restricted. Opp. at 7. But that does not address Mr. Cua's vagueness argument, which centered on the lack of notice that the statute criminalized activities in an area restricted by someone *other than the Secret Service*, even assuming the truth of the government's allegations that the area was blocked as the government says. ECF No. 232 ("Mot.") at 10. The government simply ignores Mr. Cua's argument. Indeed, the government's citation to the row of *USCP officers* only reinforces Mr. Cua's lack-of-notice argument. Such information would give zero notice to a person that the statute encompassed areas restricted by persons other than the Secret Service.

Finally, the government attempts to defend itself against the danger of arbitrary enforcement. The government does not disagree with Mr. Cua that many people who crossed the barricades were not charged. It does not attempt to differentiate those persons, effectively conceding Mr. Cua's point. Instead, the government argues that its actions are not arbitrary because it has "charged hundreds of people with violating § 1752." Opp. at 7. But the government says nothing about how it decided to charge those many people but *not* charge the *many other people*. All this information from the government tells the Court is that the government is arbitrarily enforcing the statute against *many people*, including but not limited to

Mr. Cua. The point is not that the government has charged people other than Mr. Cua under section 1752 for their actions at the Capitol on January 6, 2021—the point is that the government has never charged anyone under 1752 for entering an area not restricted by the Secret Service prior to January 6, 2021, and did not charge numerous persons engaging in actions on January who *did meet* the government's criteria under section 1752 with no apparent explanation.

**III.   The lack of any limiting principle for the government's proposed construction requires application of the rule of lenity.**

Importantly, the rule of lenity applies even where ambiguity "*permit[s]* the government's construction." *United States v. Cano-Flores*, 796 F.3d 83, 93-94 (D.C. Cir. 2015) (citing *United States v. Santos*, 553 U.S. 507, 514 (2008). At best, the government's interpretation, based on the lack of an express designation of persons who may restrict areas under section 1752, thus creating criminal liability where there may not be any, is a permissible interpretation. It is not the only interpretation, or the only plausible interpretation. Thus, the Court must narrowly construe the statute in favor of Mr. Cua.

**IV.   Under the novel construction principle, the government's interpretation would cause section 1752 to operate as an *ex post facto* law.**

The government has failed to point to any prior prosecution under section 1752 for engaging in the prohibited activities in an area restricted by anyone other than the Secret Service. The government argues that the barricades were clear, Opp. at 8, but this has nothing to with the novel construction principle. If anything, the fact that the area was being restricted by the Capitol Police, and not the Secret Service, reinforces the notion that the novel construction principle applies.

6

**CONCLUSION**

For all the foregoing reasons, and the reasons stated in his motion, Mr. Cua respectfully requests that the Court dismiss Counts Four, Five, and Six of the Second Superseding Indictment.

                                        Respectfully submitted,

DATED: January 4, 2023                */s/ William E. Zapf*
                                        Jonathan Jeffress (D.C. Bar No. 479074)
                                        William E. Zapf (D.C. Bar No. 987213)
                                        KaiserDillon PLLC
                                        1099 14th Street NW
                                        8th Floor West
                                        Washington, DC 20005
                                        T: (202) 640-2850
                                        F: (202) 280-1034
                                        jjeffress@kaiserdillon.com
                                        wzapf@kaiserdillon.com

                                        *Attorneys for Bruno Joseph Cua*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January, 2023, I filed the foregoing with the Clerk of the United States District Court for the District of Columbia by using the CM/ECF system and served a copy of it by electronic mail on counsel for the United States, Assistant United States Attorneys Kaitlin Klamann, Carolina Nevin, and Kimberly Paschall.


Dated: January 4, 2023                                              */s/ William E. Zapf*
                                                                    William E. Zapf