UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**BRUNO JOSEPH CUA** | Criminal Action No. 21-00107 (RDM)<br><br>Honorable Randolph D. Moss<br><br>Trial: February 13, 2023 |

### DEFENDANT BRUNO CUA'S REPLY IN SUPPORT OF ITS EXPERT DISCLOSURE AND OPPOSITION TO GOVERNMENT'S MOTION TO EXCLUDE THE TESTIMONY OF DR. DANIEL MURRIE

As a preliminary matter, Mr. Cua has elected to waive his right to a jury trial and has sought the government's consent to do so. Defense counsel is awaiting the government's position, but if the Court approves, the thrust of the government's motion is largely moot. *See Miller v. City of Cincinnati*, 709 F. Supp. 2d 605, 619-20 (holding that the general rule that an expert may not testimony on issues of law "is not applicable where the court is sitting as both a trier of fact and law"). *See also Grand Traverse Band of Ottawa & Chippewa Indians v. U.S. Atty. For Western Dist. Of Mich.*, 46 F. Supp. 2d 689, 694 (W.D. Mich. 1999) (finding expert's affidavit admissible under both Rules 702 and 704 because the court was sitting as the trier of fact and law on a motion for preliminary injunction). Indeed, with a bench trial, "the risk is with exclusion of expert testimony rather than with its admission—it is the exclusion that has the potential for an indelible impact on the record; if the appellate court disagrees that the expert's testimony was unreliable, a review for harmless error will be thwarted." *Joseph S v. Hogan*, No. 06 Civ. 1042, 2011 WL 2848330, at *3 (E.D.N.Y. July 15, 2011). Put simply, for a bench trial, there is no need for the Court to "gate-keep expert testimony from [itself]." *Id.* at *2.

On the merits of its motion, the government is of two minds. First, it complains that Dr. Murrie gives no "opinion on defendant's ability to form the requisite mens rea," ECF No. 238 ("Mot.") at 6, but then complains that Dr. Murrie's opinions are precluded because he "will opine on defendant's mental state at the time he committed the charged crimes, a question solely for the jury," *id.* at 7. As stated in Mr. Cua's expert disclosure, the purpose of Dr. Murrie's testimony is *relevant to* whether Mr. Cua possessed the specific intent required to convict him of Counts 1 and 2, charging violations of 18 U.S.C. §§ 231(a)(3) and 1512(c)(2). *See* ECF No. 229 at 3. The government does not dispute that such testimony is permitted to negate specific intent. *See* Mot. at 3. To be clear, Mr. Cua does not offer Dr. Murrie's testimony as an affirmative defense to excuse him from responsibility for his acts.

**I.   THE DEFENSE'S EXPERT NOTICE IS SUFFICIENT.**

The government argues that Mr. Cua's expert disclosure is deficient because "nowhere in Dr. Murrie's report does he state what his conclusions are about defendant's mental state on January 6, 2021." Mot. at 5. The government argues that Dr. Murrie simply "alludes to defendant's age" and "the potential for individuals similarly situated to defendant to be impulsive, prone to ignore future consequences, and to be susceptible to crowd dynamics."[1] *Id.* The government mischaracterizes Dr. Murrie's proffered opinions.

Contrary to the government's argument, Dr. Murrie did not simply rely on Mr. Cua's age in forming his opinions. As reflected in his 23-page report, Dr. Murrie's research and analysis of

---

[1] The government states that it is "aware of at least 68 defendants charged for their conduct at the United States Capitol who were between the ages of 18 and 24 on January 6, 2021." To defense counsel's knowledge, Mr. Cua, who was eighteen years old at the time, is the youngest person charged in relation to the events at the Capitol on January 6, 2021, and almost certainly the youngest person charged with felonies. The defense has stated this several times to counsel for the government and has never been contradicted.

2

...

Mr. Cua *specifically* (and not just someone his age) was extensive. He conducted 5.5 hours of clinical interviews and thorough psychological testing of Mr. Cua. ECF No. 85, at 2. He performed collateral interviews of Mr. Cua's parents and others. *Id.* at 2-3. And Dr. Murrie reviewed extensive court records and evidence in the case, including video footage and Mr. Cua's social media posts disclosed by the government. *Id.* at 3, 9-13. He observed, for example, that Mr. Cua "had only a superficial understanding, if any" regarding his social media posts with historical references. *Id.* at 13. He also discusses in detail in his report Mr. Cua's actions on January 6, 2021, *id.* at 13-15, as well as Mr. Cua's life after his release from custody after his arrest, *id.* at 15-17, showing again that Dr. Murrie developed a deep understanding of the facts of the case. While Mr. Cua's age is certainly a significant factor Dr. Murrie relied upon in his analysis, the depth of his study of Mr. Cua went far beyond his age to properly evaluate Mr. Cua's mental state.

Moreover, Dr. Murrie's analysis and conclusions are clearly specific to Mr. Cua: "In my view, the two factors that are most relevant to *Mr. Cua's behavior* are his *developmental immaturity* and the social forces of *crowd dynamics*." *Id.* at 18 (first emphasis added, other in original). Dr. Murrie then goes on to state that "*Mr. Cua's behavior* around the time of January 6 was striking for the role of his developmental immaturity." *Id.* After explaining in depth how and why developmental immaturity may affect a young person's behavior, Dr. Murrie translated those generalized principles to Mr. Cua in particular: "Many of Mr. Cua's actions on January 6 were impulsive, shortsighted, and occurred in the context of others (indeed, a large crowd, as described below)." *Id.* at 19. He then continues: "Developmental immaturity is one of the features that helps explain the poor risk-versus-reward calculus underlying Mr. Cua's … impulsive and provocative social media posts." He adds: "Developmental immaturity also helps

3

explain Mr. Cua's quick transition from attending a political rally with parents to impulsively—and with little appreciation of consequences—joining a crowd that illegally entered the Capitol." With respect to crowd dynamics, Dr. Murrie explained that crowd dynamics "were also evidenced in Mr. Cua's descriptions of his own behavior" and added that the influence of crowd dynamics is compounded by Mr. Cua's developmental immaturity and adolescent judgment.

Dr. Murrie's findings are also noteworthy for what they ruled out, again, specifically with respect to Mr. Cua. For example, he found that Mr. Cua "has no personality pathology or mental health problems that appear to have contributed to his behavior at the Capitol." *Id.* at 18. He also found no "conduct problems as a juvenile" and "no evidence of a broader pattern of aggression." *Id.* at 17. He also observed: "I could find no evidence that Mr. Cua's behavior in the U.S. Capitol reflected any form of affiliation with, or interest in, any formalized fringe political groups, such as those identified as 'alt-right' groups. That is, I could identify no affiliation with gangs, groups, or movements (other than the large proportion of the U.S. population that supported Trump and questioned the results of the 2020 election) that contributed to Mr. Cua's behavior." *Id.* at 18. This analysis shows that Dr. Murrie conscientiously worked to narrow down factors regarding Mr. Cua's mental state on January 6. These observations show that Dr. Murrie's analysis is specific to Mr. Cua, and not simply a generalized observation as to all defendants around his age.

This analysis by Dr. Murrie is akin to a psychologist developing a factual understanding of a subject and then concluding that their conduct reflects the traits of a person with bipolar disorder and explaining how such mental state might influence the person's conduct. Dr. Murrie's analysis is specific to Mr. Cua's mental state and his conduct on January 6, 2021. Dr. Murrie spent hours interviewing Mr. Cua about Mr. Cua's actions on January 6, 2021, and the weeks leading up to that day. The government may disagree with Dr. Murrie's opinions and

4

believe that they are not specific enough to Mr. Cua, but any such disagreement goes to the weight of Dr. Murrie's testimony and can be addressed on cross-examination.

With respect to the statements in the expert disclosure that Dr. Murrie may testify regarding his further observations and conclusions based on further forensic interviews with Mr. Cua and other evidence, the defense will supplement its expert disclosure as needed but does not anticipate that the subject and nature of Dr. Murrie's testimony will change materially. To the extent that the government objects to such supplementation, the defense suggests that the Court take the issue up at the appropriate time, if and when necessary.

## II. DR. MURRIE IS QUALIFIED TO OFFER AN OPINION REGARDING MR. CUA'S MENTAL STATE.

Remarkably, the government also argues that Dr. Murrie is not qualified to testify regarding Mr. Cua's mental state, positing that he supposedly "has little experience evaluating an individual's mental state at the time of offenses outside the context of an insanity defense." Mot. at 6. This is a red herring. Dr. Murrie has extensive experience evaluating an individual's mental state at the time of the offense. The relative volume of such testimony that does *not* relate to sanity evaluations is beside the point. This would be like arguing that a certified Ford mechanic cannot testify about Bronco exhaust systems because his CV does not say anything specific about that component of that particular vehicle. In any event, Dr. Murrie will be able to testify that he has conducted evaluations ordered under Virginia Code § 19-2-271-6, which tracks closely to the issue about which he is being offered in this case:

> In any criminal case, evidence offered by the defendant concerning the defendant's mental condition at the time of the alleged offense, including expert testimony, is relevant, is not evidence concerning an ultimate issue of fact, and shall be admitted if such evidence (i) tends to show the defendant did not have the intent required for the offense charged and (ii) is otherwise admissible pursuant to the general rules of evidence.

VA Code § 19-2-271-6(B).

Dr. Murrie's extensive list of previous testimony is attached hereto. In particular, the defense highlights Dr. Murrie's testimony in *In re Joshua Simmons*, *In re Daniel Morales*, and *Virginia v. Michael North*, which are all addressing the mental state of juveniles in criminal cases, including the issue of developmental immaturity. It should be unquestionable that Dr. Murrie is eminently qualified to testify regarding Mr. Cua's mental state on January 6, 2021, and the surrounding time period.

### III.   DR. MURRE'S TESTIMONY IS ADMISSIBLE PURSUANT TO RULE 704 AND NOT INADMISSIBLE UNDER RULE 403.

#### A.   Dr. Murrie will not opine on an ultimate issue in the case.

The government attempts to twist Dr. Murrie's disclosure to argue that he will testify as to whether Mr. Cua "did or did not have a mental state that constitutes an element of the crimes with which he is charged." Mot. at 7. That is not what is stated in Dr. Murrie's expert disclosure and is not what he will testify to at trial. As the government recognizes, the disclosure states that Dr. Murrie will testify about his "conclusions about Mr. Cua's mental state that day" and that such testimony "*bears on* Mr. Cua's guilt, including his intent to commit the offenses with which he is charged." *Id.* (quoting ECF No. 229) (emphasis added). An expert's testimony about conclusions that *bear on* a question of fact—i.e., that are helpful to a jury's determination of an ultimate factual question—is not the same as testifying as to what that ultimate fact is or is not.

Indeed, a case that the government cites says exactly this: "Defendant shall be allowed to introduce testimony and evidence otherwise admissible on the factual issue of defendant's mental state or condition during the relevant time, but defendant shall not be allowed to introduce testimony or evidence that proposes an opinion or inference as to whether the defendant did or did not have the mental state or condition necessary to constitute an element of the crime." *United States v. Gold*, 661 F. Supp. 1127, 1132 (D.D.C. 1987). Mr. Gold, like Mr.

6

Cua, intended "to pursue a defense, not of insanity, but that he did not have the mental state required of him to commit the specific intent crimes charged against him." *Id.* (emphasis in original). And the government there, like here, argued that such a defense violated the Insanity Defense Reform Act and Rule 704. *Id.* at 1128-29. Moreover, the court in *Gold* ruled that Rule 704 is inapplicable to a situation such as here where a defendant offers psychological evidence to negate specific intent: "Rule 704 [dis]allows[2] testimony as to both mental state or condition constituting an element of the crime and as a defense. This 'clearly shows that Congress appreciated the distinction between evidence negating specific intent and evidence supporting a finding of insanity.'" *Id.* at 1131 (quoting *United States v. Frisbee*, 623 F. Supp. 1217 (N.D. Cal. 1985)).

Similarly, in *Childress*, 58 F.3d 693, 726 (D.C. Cir. 1995), the D.C. Circuit held that the trial court had erred in excluding expert testimony regarding the defendant's mental state: "[W]e find no general bar to evidence of a defendant's general 'lack of capacity' or the history of his condition, so long as that evidence is adequately keyed to the issue of whether he entertained the *mens rea* required for proof of the crime." *Id.* at 729. "Thus, '[t]he proper focus [is] on the proffered link or relationship between the specific psychiatric evidence offered and the *mens rea* at issue in the case.'" *Id.* at 730. "While [defendant's] mental capacity does not 'excuse' him from culpability for his activity … it may well be relevant to whether the government proved an element of the conspiracy charge—that in committing such acts [defendant] entertained the specific intent to further the purpose of the conspiracy…." *Id*.

---

[2] It is presumably a typographical error in the *Gold* decision where it states that Rule 704 "allows" testimony as to a mental state constituting an element of the crime and as a defense. Rule 704 precludes such testimony.

Finally, as noted above, because this is a bench trial, the Court itself can discern between helpful testimony regarding Mr. Cua's mental state bearing on the question of whether Mr. Cua had the requisite specific intent and improper inferences addressing the ultimate question of intent.

### B. The probative value of Dr. Murrie's proposed testimony is not substantially outweighed by the danger of misleading the jury.

Finally, the government argues that Dr. Murrie's testimony should be excluded under Federal Rule of Evidence 403 because it is allegedly likely to confuse the jury.[3] Mot. at 8-10. As noted above, Mr. Cua recently elected to waive his right to a jury trial and proceed with a bench trial. If the Court agrees, concerns under Rule 403 fall away.

Courts routinely decline to apply the unfair-prejudice prong of Rule 403 in bench trials. "Although Federal Rule of Evidence 403 provides, in relevant part, that a court may 'exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice,' … this portion of the Rule has a highly limited application, if any at all, to bench trials." *United States ex rel. Morsell v. NortonLifeLock, Inc.*, 567 F.Supp.3d 248, 258-59 (D.D.C. 2021) (citing *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) (holding that "in the context of a bench trial, evidence should not be excluded under 403 on the ground that it is unfairly prejudicial") and *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. Unit A 1981) (holding that Rule 403 "has no logical application to bench trials" and that "excluding relevant evidence on the basis of 'unfair prejudice' [in a bench trial] is a useless procedure")).

---

[3] With respect to the government's footnote 3, Dr. Murrie will not testify regarding the extent to which Mr. Cua poses a risk of violence or criminal recidivism, what interventions might mitigate any such risk. Dr. Murrie engaged in the analysis of that question for a different purpose, not for trial.

8

This limit to Rule 403 with respect to unfair prejudice in a bench trial applies even more so to the government's argument that there is a danger of misleading *the jury*. *See American Furukawa, Inc. v. Hossain*, No. 14-cv-13633, 2016 WL 6276018, at *3 (E.D. Mich. Oct. 27, 2016) (finding that, because the parties elected to proceed with a bench trial, "exclusion of evidence based on prejudice or misleading the jury is unnecessary"); *United States v. Padilla-Galarza*, Crim. No. 15-633, 2022 WL 620643, at *3 ("[B]ecause we will have a bench trial, there is no risk of confusing the issues or misleading the jury.").

The Court may hear Dr. Murrie's testimony and determine its proper place in its analysis of the merits, including whether it is relevant to negating specific intent to one or more of the charges against Mr. Cua. The Court is more than capable of giving the evidence its proper weight without prejudice to the government or being misled as to the purpose of such testimony. As the Court in *Gulf States* explained: "Rule 403 assumes a trial judge is able to discern and weigh the improper inferences, and then balance those improprieties against probative value and necessity. Certainly, in a bench trial, the same judge can also exclude those improper inferences from his mind in reaching a decision." 635 F.2d at 519. Accordingly, the government's argument that Dr. Murrie's testimony will mislead the jury is mooted if the case proceeds by bench trial.

Moreover, and in any event, the probative value of such evidence is not substantially outweighed by the danger of it misleading the Court. The confusion, if any, that may arise is whether Dr. Murrie's testimony is taken as an opinion on the ultimate issue of whether Mr. Cua had the requisite intent. As stated above, that is not the defense's intention. Any objectionable questions can be addressed at trial.

*   *   *

For these reasons and those stated in the defense's expert disclosure, the Court should deny the government's motion to exclude the testimony of Dr. Murrie.

Respectfully submitted,

DATED: January 4, 2022

*/s/ William E. Zapf*
Jonathan Jeffress (D.C. Bar No. 479074)
William E. Zapf (D.C. Bar No. 987213)
KaiserDillon PLLC
1099 14th Street NW
8th Floor West
Washington, DC 20005
T: (202) 640-2850
F: (202) 280-1034
jjeffress@kaiserdillon.com
wzapf@kaiserdillon.com

*Attorneys for Bruno Joseph Cua*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January, 2022, I filed the foregoing with the Clerk of the United States District Court for the District of Columbia by using the CM/ECF system and served a copy of it by electronic mail on counsel for the United States, Assistant United States Attorneys Kaitlin Klamann, Carolina Nevin, and Kimberly Paschall.

Dated: January 4, 2023                                                          */s/ William E. Zapf*
                                                                                                William E. Zapf